JOHN C. CONNELLY, Appellee, v. GREENFIELD SAVINGS BANK, Appellee; COMMERCIAL SAVINGS BANK, Intervener, Appellant.

**BILLS AND NOTES:** Negotiation—Bona-Fide Holdership as Jury Question. Positive testimony that a negotiable promissory note was purchased (1) in the ordinary course of business, (2) before due, (3) for value, (4) in good faith, and (5) without notice of fraud in the inception of the note or of breach of faith in its negotiation, even though there be no direct contradictory evidence, will rarely justify the court in holding that good-faith holdership is proved as a matter of law. Especially is the issue for the jury when the purchase is of a note for a substantial amount, at a substantial discount, without knowing or inquiring anything about maker or payee, except to know that the maker lived at a distant place, and was financially good, and without making any inquiry as to the inception of the note.

DE GRAFF, J., dissents.

**TRIAL:** Instructions—Singling out Testimony. The court may very properly tell a jury that the positive testimony of a plaintiff to the effect that he was a good-faith holder, without notice, of a negotia-

able note *is not necessarily conclusive on the question of good-faith holdership.*

*Appeal from Adair District Court.*—H. S. DUGAN, Judge.

DECEMBER 15, 1921.

PLAINTIFF brought action in replevin against the Greenfield Savings Bank, to recover possession of a written instrument in the form of a promissory note which he alleges was obtained from him by fraud and without consideration.   Writ of replevin was issued, and the writing was taken thereunder and delivered to plaintiff.   Before the cause came on for trial, the Commercial Savings Bank of Des Moines intervened, alleging itself to be the real owner and holder of said instrument in due course, having purchased the same before due, in good faith, and without knowledge or notice of any defect in the title thereto or of any defense on part of the maker.   On these allegations, the intervener demands that it be adjudged the owner and entitled to the possession of the note, and that the same be surrendered; or that it have judgment against plaintiff for the full amount thereof, principal and interest.

The Greenfield Savings Bank answers that, at the time this suit was begun, it held the alleged note for collection only, on account of the intervener, from whom it had been received for that purpose, and disclaims all other interest in the subject-matter of the controversy.

Answering the petition of intervention, plaintiff denies the same, and denies that intervener is a holder of the alleged note in due course.   He further alleges that, in January, 1919, one Coughlin, an agent of a corporation known as the Associated Packing Company, fraudulently induced plaintiff to give his notes to the amount of $20,000, in two subscriptions of $10,000 each, for 200 shares of the stock of said company; and that, in connection therewith, and as an inducement to the first subscription, said Coughlin, as such agent, made and delivered to plaintiff a written agreement to resell said shares of stock for plaintiff within one year, at a net profit of $27.50 per share, and to make such sale before any of the notes given therefor by plaintiff should become due.   Said writing also represented that the said

company was solvent, and would sell the full amount of $2,-000,000 stock of the packing company. This paper was signed by the ''Associated *Finance* Company, by T. H. Coughlin.'' Soon after the first subscription, plaintiff further alleges that he was, by the like representations of said Coughlin, induced to subscribe for a second block of 100 shares of said stock, with the verbal agreement that the terms of the written agreement above described should apply to the second subscription; and that the notes given by plaintiff therefor should be held and retained by said company, and not be sold or negotiated; and that, upon demand by plaintiff within 60 days, said notes would be redelivered to him, and the stock subscription canceled. In witness of this agreement, Coughlin made and delivered to plaintiff a receipt for the notes thus obtained, upon which receipt was written the words, ''This application held by T. H. Coughlin until option of the purchaser, namely.'' One of the notes thus receipted was for $2,500, payable in one year, and is the same note now in litigation. Plaintiff further alleges that, within the period of 60 days, he elected to cancel his said subscription, and demanded a return of his notes. He further alleges that Coughlin's statements and representations inducing him to sign said papers were false, and known to be false by said Coughlin, and made for the purpose of deceiving him, and that plaintiff was thereby deluded and induced to enter into the deal; that he has never received said shares of stock or any consideration whatever for the giving of said notes; that said packing company is bankrupt, and its affairs are now being wound up by a receiver; that the note in controversy was delivered by Coughlin to the intervener in breach of faith, and contrary to the agreement upon which he received it; and that the same was taken over by the intervener not in good faith, and subject to the plaintiff's defense thereto. The issues were tried to a jury, which returned a verdict for the plaintiff for the possession of the note, and the intervener appeals.—*Affirmed.*

*Stipp, Perry, Bannister & Starzinger* and *Lynch & Byers,* for appellant.

*Wilson & Crowley,* for appellee.

WEAVER, J.—I.   The somewhat extended preliminary state-
ment sufficiently discloses the nature of plaintiff's claim, as well
as the opposing claims of the intervener.   That the note in con-
troversy had its origin in gross fraud and
breach of faith on part of those who procured
its making is not a matter of doubt, and the cen-
tral issue in the case is whether the intervener is
a holder of the note in due course, without notice of the defects
therein, and therefore entitled to recover without regard to the
equities between the original parties thereto.   In his evidence
in chief, the plaintiff having offered his testimony as indicated
in the preliminary statement, and having rested, the intervener
assumed the burden to establish the regularity and good faith
of its holding and ownership of the paper.   In support of this
claim, the president of the bank, Mr. Elliott, testified that he
alone represented the bank in that purchase, and that he and the
cashier, Mr. Frazier, were the only officers of the bank actively
engaged in the transaction of its daily business.   He testifies quite
positively that the note was purchased in the regular course of
business, and without any notice whatever of the nature of the
consideration for which it was given or of the transaction in
which it had its origin.   The cashier also affirms that he had no
part in the purchase, and was wholly without notice or knowledge
of any defect therein or defense thereto.   It appears from the
president's testimony that, when the note was offered to him,
he wrote letters of inquiry to three different banks in Adair
County, where plaintiff resides, asking only if Mr. Connelly was
financially good for a note of $2,500; also made similar inquiries
of one or more individuals who he thought might be able to give
the desired information; and the replies received being satisfac-
tory, he bought the note, paying $2,300 for it.   Being more
closely questioned, the witness said that Coughlin had been,
temporarily at least, a depositor in the bank, but to what extent
is not stated.   He further testified:

"I did not know him at all until I met him that first day,—
the day I bought the note,—May 12th. * * * Don't know where
Coughlin is now.   He is not now a customer of the bank.
Haven't the slightest idea where he is.   When I bought the note,
all I relied on was Mr. Connelly's financial standing.   When

1. BILLS AND
NOTES: negotia-
tion: bona-fide
holdership as
jury question.

Coughlin came to me, I did not know him; did not know where he lived; did not know his residence. Did not know what business he was in. Did not inquire what the note was given for. All I wanted to know was whether the signature was genuine, the note negotiable, and the maker good. Made no inquiries as to the genuineness of Connelly's signature.''

There is no direct evidence rebutting the testimony of the bank's witnesses upon this question, and the argument most strenuously urged by counsel in its behalf on this appeal is that its status as a holder of the note in due course and in good faith is established as a matter of law, and that the trial court erred in denying the intervener's motion for a directed verdict.

Assuming, as we must for the purposes of this appeal, that the note in controversy was fraudulent in its origin, or at least that it was put in circulation by a breach of good faith on the part of Coughlin or his principal, we think it must be held that the question whether the intervener is a holder in due course and in good faith is a jury question. The statute, Code Supplement, 1913, Section 3060-a59, imposes on the holder in such case the burden to prove affirmatively that he or some person under whom he claims acquired the title in due course. While it may be conceded that, in the various jurisdictions where this rule of law prevails, there is more or less variance in the strictness of its application to decided cases, and that some courts are more inclined than others to dispose of the issue so raised as a matter of law, it is comparatively well settled in this court that, unless it be in a very exceptional case, the question whether the burden so placed upon the alleged holder has been met and overcome is one for the jury. *McNight v. Parsons,* 136 Iowa 390; *City Nat. Bank v. Jordan,* 139 Iowa 499, 510; *Perry Sav. Bank v. Fitzgerald,* 167 Iowa 446, 453; *Robertson v. U. S. Live Stock Co.,* 164 Iowa 230; *City Dep. Bank v. Green,* 138 Iowa 156, 160; *Arnd v. Aylesworth,* 145 Iowa 185, 190; *Iowa Nat. Bank v. Carter,* 144 Iowa 715; *Commercial Bank v. Paddick,* 90 Iowa 63; *Stotts v. Fairfield,* 163 Iowa 726, 739; *Bank of Bushnell v. Buck Bros.,* 161 Iowa 362, 370; *Merchants Nat. Bank v. Grigsby,* 170 Iowa 675, 676; *Waukee Sav. Bank v. Jones,* 179 Iowa 261; *Lewis v. Western Stock Remedy Co.,* (Iowa) 178 N. W. 536 (not officially reported); *Frank v. Blake,* 58 Iowa 750; *German Am. Nat. Bank*

*v. Kelley,* 183 Iowa 269; *Farmers & M. St. Bank v. Shaffer,* 172 Iowa 173, 175.

Generally speaking, the mere fact that the holder of a note testifies that he received it without knowledge or notice of any defect in the title thereto or of any defense on part of the maker is not sufficient to establish the *bona fides* of his possession, as a matter of law. The issue so presented is one of fact, upon which the holder must assume the burden of an affirmative showing. That showing is ordinarily sought to be made by the spoken word of witnesses. In every trial of a fact issue in a law action, the court instructs the jury that they, and not the court, are the judges of the credibility of the witnesses and of the weight and value of their testimony, and that, in making their estimate thereof, they are authorized to take into consideration the appearance and demeanor of each witness on the stand, the manner as well as the matter of his testimony, his apparent candor or lack of it, and his interest, if any, in the result of the trial; and there would appear to be no sound reason why these tests should not be applied to the purchaser of commercial paper, as well as to other litigants and witnesses in general. It is a rare occasion which justifies a court in directing a verdict upon a fact issue in favor of the party on whom rests the burden of proof. To use the language of the Massachusetts court:

"It is not often, where a party has the burden of proving a fact by the testimony of witnesses, that the jury can be required by the court to say that the fact is proved. They may disbelieve the witnesses. If the conclusion is to be reached by drawing inferences of fact from other facts agreed, ordinarily the jury alone can draw these inferences." *Anthony v. Mercantile Mut. Acc. Assn.,* 162 Mass. 354.

In the case of *Goodman v. Simonds,* 20 How. (U. S.) 343, the United States Supreme Court, while holding rigidly to the rules which prevailed before the enactment of the Uniform Negotiable Instruments Law, laid down the proposition that, whenever the good faith of the holder is fairly put in issue, "the question whether the party had such knowledge or not, is a question of fact for the jury, and, like other disputed questions of *scienter,* must be submitted to their determination, under the instructions of the court; and the proper inquiry is, Did the party

seeking to enforce the payment have knowledge, at the time of the transfer, of the facts and circumstances which impeach the title, as between the antecedent parties to the instrument; and if the jury find that he did not, then he is entitled to recover, unless the transaction was attended by bad faith, even though the instrument had been lost or stolen. Everyone must conduct himself honestly in respect to the antecedent parties, when he takes negotiable paper, in order to acquire a title which will shield him against prior equities. While he is not obliged to make inquiries, he must not willfully shut his eyes to the means of knowledge which he knows are at hand, * * * for the reason that such conduct, whether equivalent to notice or not, would be plenary evidence of bad faith."

In *Canajoharie Nat. Bank v. Diefendorf*, 123 N. Y. 191, the action was upon a note fraudulent in its inception, of which the plaintiff bank, acting by its cashier alone, claimed to be an innocent holder. There, as here, it was insisted for the bank that, the testimony of the cashier being undisputed, a verdict should have been directed in its favor. Overruling the point, the court said:

"The burden of proof * * * rested upon the plaintiff; and upon all the evidence, the question, we think, was for the jury to determine. The claim that the plaintiff's cashier was a disinterested witness, whose testimony must be regarded as controlling, if not contradicted, cannot be sustained. Aside from the alleged improbability of his statements, he was the financial agent of the plaintiff and the owner of one fifth of its capital stock, and aside from his direct interest, responsible to his principal for the care, fidelity, and prudence with which he discharged his official duties. His interest in the transaction was coextensive with that of the plaintiff, and brings him directly within the cases which hold that the credibility of such a witness is a question for the jury to determine."

See *Elwood v. Western Union Tel. Co.*, 45 N. Y. 549; *Honegger v. Wettstein*, 94 N. Y. 252. See, also, *Joy v. Diefendorf*, 130 N. Y. 6; *Fuller Buggy Co. v. Waldron*, 99 N. Y. Supp. 561; *Miller v. Boyer*, 79 Hun (N. Y.) 131; *North Chicago St. R. Co. v. Anderson*, 176 Ill. 635.

The mere fact that the holder bought the note before due

and paid value for it is not in itself a showing of good faith, for, as said by the court in *Knowlton v. Schultz,* 6 N. D. 417 (71 N. W. 550) :

"It may be true in this case that plaintiff bought before maturity, for value, and without notice of any defense; and yet he may not be a purchaser in good faith. He may, when he bought, have had knowledge of facts which excited in his mind such suspicions as to the paper that he feared to make an investigation, lest it would disclose a defense, and therefore he carefully shut his eyes, and bought in the dark."

In all these cases, the question of the good faith of the alleged innocent holder of negotiable paper tainted with fraud in its inception or negotiated in breach of faith is held to be for the jury. In both *McNight v. Parsons,* supra, and *Arnd v. Aylesworth,* supra, the law in such cases was very fully discussed, and a conclusion reached opposed to the contention of appellant. Both of these precedents have been cited and followed in very many cases in this and other states, and must, we think, be regarded as the settled law of this jurisdiction. From the *Arnd* case we quote, as peculiarly applicable to the question now under discussion :

"It is important that this distinction be borne in mind in the consideration of cases like the one at bar; for it is quite possible that the testimony as a whole may be insufficient to justify an affirmative finding of bad faith on the part of the plaintiff, and still not be so conclusive of his good faith as to require a withdrawal of the question from the jury."

And further :

"It is ordinarily to be expected, in these cases, that the purchaser will testify to his good faith and want of notice, and that defendant is compelled to rely upon circumstantial evidence to rebut such showing. Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser, is, therefore, a question for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase but is such that no fair-minded person can draw any other inference therefrom. A categorical denial of notice or knowledge is something which in many, if not in most, instances cannot be opposed by direct proof; and the

credibility of the witnesses, their interest in the case, the reasonableness or unreasonableness of their statements, the time, place, and manner of the transaction, its conformity to or its departure from the ordinary methods of business, and all the other facts and circumstances which, though of slight moment in themselves, yet, when taken together, give character and color to the purchase under inquiry, constitute a showing which the court cannot properly pass upon as a matter of law."

Elaborating somewhat upon that thought, we said, in *Robertson v. U. S. Live Stock Co.,* supra:

"In all these cases, the testimony might be insufficient to establish bad faith, and still not affirmatively establish good faith. The burden is on the intervener, in this case, to establish *good faith.*"

The distinction here noted is quite lost sight of by appellant's counsel upon this appeal.

In a direct line with these authorities is the opinion by Salinger, J., in *Farmers & M. St. Bank v. Shaffer,* 172 Iowa 173. Announcing our holding that the issue of plaintiff's good faith was for the jury, we said:

"This we do, though not unmindful that the officer of the bank who purchased the note for the bank testified that he did so without any notice or knowledge of the consideration for which it was given, or the sale of the stock to the defendant. Nor do we overlook the fact that, under the Negotiable Instruments Act, the purchaser of commercial paper cannot be charged with notice of any defense thereto unless it appear that he had actual knowledge of the infirmity in such paper 'or knowledge of such facts as that his act in taking the instrument amounted to bad faith.' But this is a matter for charging the jury, rather than a rule which compels a holding that, under the testimony in this case, this burden was not discharged."

We recognized the same principle in the case of *Meardon v. Iowa City,* 148 Iowa 12, 16, where we said of the undisputed testimony of a plaintiff to a fact put in issue by the defendant's answer:

"This evidence of the plaintiff was given in support of certain allegations of his petition. These allegations were denied generally and specifically in the answer. They related to mat-

ters which were peculiarly within the knowledge of the plaintiff himself. It is true that the defendant offered no evidence in contradiction of the testimony of the plaintiff. This fact, however, did not relieve plaintiff of the burden of proof; nor did it entitle him to have his evidence regarded as conclusive.''

The same rule has been repeatedly affirmed by the Massachusetts court in numerous cases brought by alleged innocent holders to recover upon negotiable paper procured by fraud, or put in circulation in breach of faith. *Merchants' Nat. Bank v. Haverhill Iron Wks.*, 159 Mass. 158 (34 N. E. 93); *Giles v. Giles*, 204 Mass. 383 (90 N. E. 596); *Phillips v. Eldridge*, 221 Mass. 103 (108 N. E. 909). See, also, *Second Nat. Bank v. Smith*, 91 N. J. L. 531 (103 Atl. 862); *Schmidt v. Marconi W. Tel. Co.*, 86 N. J. L. 183 (90 Atl. 1017); *Second Nat. Bank v. Hoffman*, 229 Pa. 429 (78 Atl. 1002); *Citizens Sav. Bank v. Houtchens*, 64 Wash. 275 (116 Pac. 866); *Gosline v. Dryfoos*, 45 Wash. 396 (88 Pac. 634); *Hill v. Dillon*, 176 Mo. App. 192 (161 S. W. 881); *First Nat. Bank v. McWhorter*, (Tex.) 179 S. W. 1147; *Boyd v. McCann*, 10 Md. 118, 123; *McGill v. Young*, 16 S. D. 360 (92 N. W. 1066); *Union Nat. Bank v. Mailloux*, 27 S. D. 543 (132 N. W. 168); *Woodin v. Durfee*, 46 Mich. 424 (9 N. W. 457).

In the last-cited case, Judge Cooley says:

''A jury may disbelieve the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment. If they return what he thinks is a perverse verdict, he may set it aside and order a new trial; but he cannot take upon himself their functions.''

Such is the accepted doctrine of all the precedents we have cited, and of many more which we do not take time to collate. It is not to be denied that there are precedents from some courts tending to sustain the position taken by counsel for the appellant; but if they may be said to indicate the existence of two divergent lines of authority, this court is distinctly aligned with those which hold that, under all ordinary circumstances, the question whether the holder of a negotiable instrument fraudulently procured or wrongfully negotiated has maintained the burden of showing that he acquired it in good faith and without notice, is for the jury

The cases we have mentioned and the many others which could be cited to the same effect are entirely too numerous to justify us in prolonging this opinion for their discussion. We think it should be said, however, with reference to the instant case, that the testimony of plaintiff's witnesses as to the good faith of the purchase of the note is to be considered in connection with certain proved or admitted circumstances not without a legitimate bearing upon the credibility, weight, and value of such evidence. The man Coughlin was a total stranger to the bank president who dealt with him; he was seeking to negotiate a note for a very considerable amount; the maker of the note was likewise unknown to the bank, and lived at a distance outside of the territory immediately tributary to the bank; the president made several inquiries of different persons as to Connelly's financial standing, but carefully refrained from any inquiry of Coughlin or any other person as to the origin of the paper or as to its consideration; he in effect says that he did not want or care for any information of that nature; the note for $2,500, drawing 6 per cent interest, bore date of March 10, 1918, was negotiated May 12, 1918, and had but 10 months yet to run, was signed by a man assumed to be perfectly good for the debt, and yet Coughlin was selling it for $2,300, a figure at which, if collected when due, would net the bank something like 15 per cent return on its investment. Coughlin then disappears.

We do not hold that any one or more of the circumstances to which we have alluded is sufficient, as a matter of law, to charge the plaintiff with notice of the defect in the title to the paper, nor do we minimize the importance of the statutory rule that, to charge the purchaser with notice, he must have actual knowledge of the infirmity or defect, or knowledge of such facts that his act in taking the instrument amounted to bad faith. We further concede that mere negligence of the purchaser is not sufficient to impeach his good faith. But all these things may be inquired into by the jury as bearing upon the credibility and weight of the testimony offered in support of the claim of good faith which the holder is required to affirmatively establish. Such was our holding in *Robertson v. U. S. Live Stock Co.,* supra; *Iowa Nat. Bank v. Carter,* supra; *German Am. Nat. Bank v. Kelley,* supra; and in the very recent case of *Lewis v.*

*Western Stock Remedy Co.,* (Iowa) 178 N. W. 536 (not officially reported); and in very many others of the precedents already cited. And while the purchaser of commercial paper is under no duty to investigate into the consideration for which such paper was given, and his mere failure to make such inquiries is not chargeable to him as an act or omission in bad faith, yet, if it shall be shown or if it is fairly inferable that he purposely and consciously avoids such inquiry, to evade notice or knowledge of a defect in the title to such instrument or of the existence of a good defense thereto, his act in this respect "amounts to bad faith;" or, to use the language of the Federal Supreme Court, already quoted from *Goodman v. Simonds,* supra, "such conduct, whether equivalent to notice or not, is plenary evidence of bad faith,"—a proposition affording sufficient justification for the submission of this case to the jury. Bearing further in this direction, we cite, without quotation, the following precedents: *Auten v. Gruner,* 90 Ill. 300; *Gould v. Stevens,* 43 Vt. 125; *Loftin v. Hill,* 131 N. C. 105; *Pierson v. Huntington,* 82 Vt. 482 (74 Atl. 88); *Russell v. Hadduck,* 3 Gill. (Ill.) 233; *Giberson v. Jolley,* 120 Ind. 301; *Seybel v. National Cur. Bank,* 54 N. Y. 288; *Hall v. Wilson,* 16 Barb. (N. Y.) 548; *Johnson v. Way,* 27 Ohio St. 374, 380.

The decision by this court in *Johnson v. Buffalo Center St. Bank,* 134 Iowa 731, cited and relied upon by appellant, is not inconsistent with the views herein expressed. The statement there formulated by McClain, J., to the effect that, "where the evidence in favor of the party having the burden of proof on an issue is in no way contradicted or its credibility affected by impeachment, the court may assume the fact relied upon to be proven, and need not submit the question to the jury, for a verdict against such evidence would be set aside," though perhaps a somewhat sweeping generality, is without application to the case before us; for the testimony on which the bank relies is not devoid of circumstances tending to impeach the good faith of the transaction by which it acquired possession of the paper.

The trial court did not err in overruling the intervener's motion for a directed verdict.

II.   Counsel for appellant have given considerable attention to a discussion of the burden of proof; but they concede

that, when the plaintiff, as maker of the note, has made a prima-facie showing that the note was obtained by fraud, or was put in circulation in breach of faith, it then became incumbent on the intervener to meet the case so made by proof that it purchased the note in the ordinary course of business, before maturity, for value, in good faith, and without notice of the equities in favor of the maker. It can make no material difference whether we say the burden of proof in this respect was on the intervener, or say it was then charged with the burden of "going ahead" or of offering further evidence. That is merely a matter of nomenclature—the selection of a label for a thing concerning the real nature of which there can be no serious difference of opinion. To say nothing of fundamental principle, it is now a statutory requirement that the party who claims to be a holder in due course and in good faith of negotiable paper wrongfully or fraudulently put in circulation must assume the burden, call it what you will, of proving the innocent character of his holding. In the absence of evidence of any fraud or breach of faith in the inception of a note, there is, of course, a presumption in favor of the holder, both as to the validity of the note and of the innocent character of his possession; but, the alleged fraud and invalidity once shown, that presumption no longer obtains, and the holder is put to the proof of his *bona fides*. Although this action in the beginning involved solely the question of the rightful possession of the note, as between the maker and the Greenfield Savings Bank, which disclaimed all interest in the paper, the appellant, by its intervention claiming title in itself and demanding a recovery on the note in its own favor, has made itself, for all practical purposes, the real plaintiff, and as such, assumed the burden of producing the proof to sustain its claims.

III. Errors are assigned upon the court's charge to the jury, and upon its refusal to give requested instructions. For the most part, the criticisms offered in this respect have their basis in and revolve around the appellant's contention that the evidence is insufficient to justify a finding for the plaintiff, and that a verdict for the intervener should have been directed. That objection has already been considered and overruled, and there is no occasion for repeating or reopening the discussion.

Special exception is taken to that part of the tenth para-

graph of the charge which instructs the jury that the statements made by the president of the bank on the witness stand concerning the good faith of the purchase of the note are not necessarily conclusive, but should be considered in the light of all the circumstances developed on the trial. The objection urged is that the instruction singles out the testimony of the intervener's principal witness for adverse or unfavorable comment, and casts suspicion upon his credibility. We think it clear, however, that such was neither the intent nor the effect of the instruction. This witness was the only one professing to have direct or personal knowledge of the transaction; and, in the absence of any rule or guide in the instructions, question might naturally arise in the minds of the jurors whether they were not bound to accept his statements as conclusive. The effect of the rule stated by the court was to inform the jurors that, in passing upon the weight to be accorded to the direct evidence, they were at liberty to take into consideration all the relevant facts and circumstances. This is not a disparagement of the witness, nor is it in any sense an unfavorable comment on his testimony. The instruction is not materially unlike the one which was held proper in *Bank of Bushnell v. Buck Bros.*, 161 Iowa 370. It is, in substance, what we have held in a score of the cases already cited, that the direct and positive testimony of the holder as to the good faith of his alleged purchase of negotiable paper is not conclusive, and that the question whether he has satisfied the burden which the law imposes upon him is, under all ordinary circumstances, for the jury.

*2. TRIAL: instructions: singling out testimony.*

We find no prejudicial error in the instruction complained of. In so far as we have not specifically mentioned or discussed other alleged errors presented by the record, we think they are controlled by the conclusions hereinbefore announced, and do not require further attention.

We find no reason for ordering a new trial, and the judgment of the trial court is—*Affirmed*.

EVANS, C. J., PRESTON and FAVILLE, JJ., concur.

DE GRAFF, J., dissents.