FARMERS NATIONAL BANK OF KINGSLEY, Appellant, v. WESLEY PRATT, Appellee.

**BILLS AND NOTES:** Bona-Fide Purchasers—Due Course Holdership as
1 Jury Question. Holdership in due course is not ordinarily established as a matter of law by *positive* testimony on the part of the holder that he took the note for value, in the ordinary course of business, before maturity, and *without any knowledge* of fraud in the inception of the note. So held where the bank, in purchasing, made no inquiry as to the consideration for the note, and where one of the directors of the bank was instrumental in bringing about the original execution of the note.

**EVIDENCE:** Similar Transactions—Fraudulent Representations. Proof
2 is allowable, on the issue whether the execution of a promissory note was induced by fraudulent representations, that similar representations were made to other note signers by the party so charged, at or near the same time, and in connection with the execution of like notes.

**EVIDENCE:** Documentary—Books of Account—Conditions Precedent.
3 On an issue as to the amount of assets of a corporation, its books of account are admissible on a showing that they were correctly kept in accordance with the directions of the fiscal authorities of the corporation, even though the bookkeeper has no personal knowledge of the inherent truthfulness of the different entries.

*Appeal from Plymouth District Court.*—WILLIAM HUTCHINSON, Judge.

MARCH 14, 1922.

SUIT upon a promissory note given by the defendant in payment for stock in the Alfalfa & Cereal Milling Company, of Sioux City. The defendant pleaded fraud in the inception of the note. The jury returned a verdict for the defendant, and the plaintiff appeals.—*Affirmed.*

*George W. Sturgess* and *Jepson, Struble & Anderson,* for appellant.

*J. M. Wormley, H. S. Martin,* and *R. E. Hess,* for appellee.

FAVILLE, J.—This case presents the not unusual situation of a suit by a purchasing bank upon a promissory note given by a subscriber to corporation stock. Appellant claims to be a bona-fide purchaser of said note in due course. Appellee pleaded that the note was secured by false and fraudulent representations on the part of the officers and agents of the corporation in which he purchased stock, in payment for which he executed the said note. The evidence shows that the appellee is a farmer, about 30 years of age, residing in the vicinity of Kingsley, Iowa.

1. BILLS AND NOTES: bona-fide purchasers: due course holdership as jury question.

On August 20, 1919, appellee was approached at his home by three gentlemen, the president of the corporation in which he afterwards purchased stock, a stock salesman for said corporation, and a wealthy farmer residing in the locality, who was known to the appellee by sight and reputation, and who, upon the occasion in question, officiated in the capacity of introducing the other parties to the appellee. This gentleman, Mr. Sitzman, was also at said time, and had been for several years, a director of the appellant bank.

It is unnecessary that we set out in detail the representations that were made to the appellee, to induce him to execute the note sued upon. There is no dispute in the record of his testimony in regard to the representations that were made. The parties pictured to him a glowing prospect of a large mill, to be located in Sioux City, to be constructed by farmers, who were allowed to take only $10,000 worth of stock each; that 32 acres of land had been purchased for the erection of the plant; and that the company had on hand $400,000, partly in cash and partly in farmers' notes; that the stock would soon be worth $125 per share, and would pay dividends of 20 per cent or more. It appeared from the evidence that, at the time these representations were made, the cash assets of the company aggregated $68.14, and that it had no bills receivable; that, prior to said date, there had been a total subscription of $110,400; and that all stock notes had passed out of the possession of the company.

F. A. Gates is president and L. F. Kliebenstein is cashier of the appellant bank. It appears that the appellee was known to the officers of the appellant. The note was purchased by the cashier on the same day on which it was given, the bank paying

therefor $2,880. The face of the note was $3,000. Mr. Koon, who was the president of the Alfalfa & Cereal Milling Company, sold the note to the appellant. The note was made payable to the maker, who indorsed the same. When the note was presented to the bank for purchase, it bore no revenue stamps, but Mr. Koon bought stamps from the appellant, and placed them on the note and canceled them. The cashier of the bank testified that he knew who Mr. Koon was, and that he had been in the bank several times before this, and that the cashier had bought notes of him before the transaction in question. He testified that Mr. Sitzman was in the bank off and on, with Mr. Koon and the stock salesman, Lewis. The note was indorsed and guaranteed by the Alfalfa & Cereal Milling Company, by Koon as president, and was paid for in the form of a cashier's check, payable to said company. The cashier testified that he knew that the Milling Company had been organized at Sioux City, but did not know whether it was doing business, and did not inquire about these matters, nor look up the responsibility of the company or of Mr. Koon or Mr. Lewis.

The president of the bank, Mr. Gates, testified that he and the cashier had charge of the buying of notes; that, from July 30 to August 27, 1919, the bank purchased about 20 notes from these stock salesmen, and that during this time they were in the bank about six different times. He says he was aware that Sitzman was driving around the country with the salesmen; that he had seen him riding with this stock salesman, and knew what they were doing; that he did not know that the notes that were brought in were for stock, but presumed they were; that he dealt with Mr. Koon as president of the Milling Company, because Koon told him he was, and that he never made any inquiry outside in reference to the matter; and that, at the time he bought other notes from these men, he made no inquiry as to what consideration was given for the notes. Before this time, Koon had endeavored to sell Gates some stock in the company, but he had declined to buy. He testified that he did not usually make any inquiry in regard to the consideration given for notes purchased; that the principal thing was to ascertain whether the maker was good. It was some time after the purchase of the note before anything was said to the appellee with regard

to it.  Gates also testified that he and the cashier had some talk about the purchase of these notes, before they were bought.

I.  The foregoing is a general statement of the evidence with regard to the purchase of the note.  The appellant filed a motion for a directed verdict in its behalf, which was overruled; and it is earnestly insisted that said motion should have been sustained.  We have quite recently had occasion to examine the authorities on this question.  In *Connelly v. Greenfield Sav. Bank,* 192 Iowa 876, we reviewed the question of whether or not a verdict should be directed in favor of the holder of a note, under circumstances very similar to those in the instant case. We said:

"Generally speaking, the mere fact that the holder of a note testifies that he received it without knowledge or notice of any defect in the title thereto or of any defense on part of the maker is not sufficient to establish the *bona fides* of his possession, as a matter of law."

We reviewed the authorities at length, and do not deem it necessary that they be cited again, or that we reiterate the propositions announced in the *Connelly* case.  Suffice it to say that we adhere to the rules therein laid down.

In the instant case, the officer of the bank who purchased the note in question testified that he purchased it for a consideration, before maturity, and without any notice or knowledge that the same had been procured fraudulently, or that there was any defense thereto.  Notwithstanding this direct and positive testimony on the part of the officer of the bank, under the circumstances shown in this case, and under our previous holdings, we think it was a question for a jury to determine whether the note had been so purchased.  The jury had a right to take into consideration and give weight to the fact that Sitzman, who was not only active in securing the note, but also instrumental in introducing the stock salesmen to the officers of the bank, was himself a director in the bank, and, while not actively engaged in the management of the bank's business, was associated with its officers and well known to them.  The jury would be warranted in finding, under the evidence, that the president and cashier of the bank both knew that Koon and Lewis, with the assistance of Sitzman, were engaged in the business of selling

stock, and that they had secured at least some 20 notes in number, of various amounts, which the appellant bank purchased at a discount. The fact that the officers of the bank refrained from making any inquiry, either of the parties offering the notes for sale or of the makers thereof, with regard to the consideration for which the notes were given, is a circumstance proper to be considered by the jury, in determining whether or not the appellant was a purchaser in good faith.

The foregoing, with other circumstances proven by the evidence, was sufficient, under our previous holdings, to take to the jury the question of whether or not the appellant was a good-faith purchaser in due course. The court did not err in overruling the appellant's motion for a directed verdict. See authorities cited and discussed in *Connelly v. Greenfield Sav. Bank,* supra.

II. It is urged that the court erred in permitting certain witnesses to testify in regard to similar representations made to the witnesses Kitterman and Bainbridge. It appears that these two witnesses had also subscribed for stock at the solicitation of the three salesmen, Koon, Lewis, and Sitzman, who sold stock to the appellee. At the solicitation of these salesmen, the witnesses had gone to Sioux City with the salesmen, to interview other parties there who were connected with the company; and error is predicated upon the conversation proved to have taken place between the witnesses and all of said parties in Sioux City, when the appellee was not present.

2. EVIDENCE: similar transactions: fraudulent representations.

In cases involving fraud and false representation, proof is allowable of the fact that similar representations have been made to others by the party so charged, at or near the same time, and in connection with transactions of like character, as showing knowledge and fraudulent intent. *First Nat. Bank v. Wise,* 172 Iowa 24; *Stotts v. Fairfield,* 163 Iowa 726; *Gibson v. Seney,* 138 Iowa 383; *Elbert v. Mitchell,* 131 Iowa 598.

The transactions proven in this case were participated in by the same parties who made the representations to appellee, and were of the same character, and in regard to the same subject-matter, and were made at or about the same time. We think they were admissible in an action of this kind, tending

to show knowledge and fraudulent intent on the part of the parties who secured the note from the appellee. This matter was carefully and explicitly covered by the instructions of the court, so that the jury must have understood the ground upon which this testimony was admitted, and the purpose for which they could give it consideration. We find no error at this point.

III. The books of the Milling Company were brought into court, and the bookkeeper of said company testified in regard to entries made therein. It is contended that it was error to permit the bookkeeper to testify from the books in regard to the entries therein, showing the assets of said company, because the bookkeeper testified that she had no personal knowledge of the truthfulness of the entries shown by said books. The books showed that the company had on hand in the bank on the 20th of August, 1919, a certain amount of money, and the witness testified that she knew this to be correct only because of the entries in the books; that the entries were made correctly by her in said books, under the direction of one Mr. Johnson, who was the "fiscal agent" of the company, and in charge of the books; and that the entries were regularly made, in connection with its business. We think that, upon this state of the record, the books were admissible for the purpose for which they were used in evidence. *Roberts v. Ozias*, 179 Iowa 1141; *Banning v. Marleau*, 121 Cal. 240 (53 Pac. 692).

3. EVIDENCE: documentary: books of account: conditions precedent.

The evidence of an expert who had examined the books of the Milling Company and testified as to their contents and the facts as disclosed therein, regarding the financial condition of said company, was also admissible in evidence.

IV. Objection is urged to ten instructions given by the court. We have examined all of these instructions with care, and also the objections lodged against each of them. We find no error therein of which the appellant can justly make complaint. The instructions as a whole fairly presented the case to the jury. We find no error in any of the instructions which, when the charge is read as a whole, require reversal on our part. The case seems to have been fairly submitted to the jury, and the verdict has support in the evidence.

Since we find no error requiring reversal, the judgment of the lower court is—*Affirmed*.

Stevens, C. J., Evans and Arthur, JJ., concur.