# CHARLESTON.

MARYLAND FINANCE CORPORATION *v.* PEOPLES BANK
OF KEYSER

(No. 5296)

Submitted May 20, 1925.    Decided May 26, 1925.

1.  BILLS AND NOTES—*On Showing of Fraud, Holder has Burden of Proving Purchase in Good Faith.*

    Under our negotiable instrument law, where it is shown that the paper sued on was originally procured by fraud, the burden is on the holder suing thereon to show that he purchased it in good faith, for value before maturity, without notice of any infirmity.    (p. 235.)

    (Bills and Notes, 8 C. J. § 1292).

2.   SAME—*Evidence of Plaintiff's Good Faith in Obtaining Cer-
     tificate of Deposit, Held Insufficient to Support Verdict
     for it.*

A case where the vice of such instrument is clearly shown,
and the holder's evidence is insufficient to sustain the burden
cast upon it to prove that it was a purchaser in good faith.
(p. 236.)

(Bills and Notes, 8 C. J. § 1358).

(Note:   Parenthetical references by Editors, C. J.—Cyc.   Not
        part of syllabi).

Error to Circuit Court, Mineral County.

Action by the Maryland Finance Corporation against the
People's Bank of Keyser.   Judgment for plaintiff, and de-
fendant brings error.

*Reversed and rendered.*

*Chas. N. Finnell* for plaintiff in error.

*F. M. Reynolds* and *Emory Tyler* for defendant in error.

WOODS, JUDGE:

This is an action of motion for judgment, based on a cer-
tificate of deposit.   Defendant pleaded non-assumpsit.   By
agreement of the parties, the case was heard by the court
in lieu of a jury.   Judgment was rendered for the plaintiff
for $1,494.90.

On August 13, 1921, B. H. Dundon, the vice-president and
general manager of the Maryland Finance Corporation, a
Maryland corporation, wrote Mr. T. D. Leps, cashier of the
Peoples Bank of Keyser, a West Virginia corporation, the
following letter:

"Dear Mr. Leps:
    Mr. Wiley has taken up with me several times
regarding Taylor matter.
    While no doubt this matter is causing you some
anxiety, Mr. Taylor is still trying to get this
matter adjusted.   I have seen a letter from him
dated August 9th, stating that he will be in Mid-
dlesburg on August 15th to take up the matter
with Moss and Gordon.   As soon as I hear anything
definite will immediately communicate with you.
As most of Mr. Taylor's property is in West Vir-
ginia, as under the laws of this state the courts
do not open up to October and should you secure

judgment, same cannot be executed until the end of the term, which is between the middle of November and the first of December.

You still have plenty of time to take whatever action you contemplate taking. I am extremely sorry this matter has been drifting along in this manner and hope that same will be closed out to your satisfaction before long.

The writer could pay $100.00 for a $1,000.00 C-D due in four months, if you can handle same. Will not need the paper until around the 5th of September.

Hoping to see you in the near future, I am,
Very truly yours,
B. H. Dundon, V. P. & G. M.''

The foregoing letter was written on the official stationery of the corporation, and under the title ''officers'' appear the following: ''William Stanley, President; W. Mitchell Digges, Chairman of the Board; John L. Swope, Vice-President; Bernhard H. Dundon, Vice-President and General Manager; John L. Tregellas, Treasurer; Don C. Fithian, Secretary and Assistant Treasurer; Robert G. Merrick, Assistant Treasurer.''

On December 21, 1921, the following letter was written on the Maryland Finance Corporation's stationery:

''Dear Mr. Leps:

My note for $1,500.00 will be due December 24th. In view of the unusual circumstances which have developed here within the last month, I am unable to take care of this obligation in full as expected.

I am enclosing herewith check for $130.00 and renewal note for $1,400.00 due in four months. I feel by the time that this matures I will be able to take care of same in full.

Trusting that this renewal will be acceptable and regretting the necessity of asking for the extension, with best wishes for a happy Christmas and prosperous New Year, I am,
Very truly yours
1709 W. Lombard St.,
Baltimore, Md.          B. H. Dundon.''

On December 28th, Leps, without authority or knowledge of the President of the Bank, its Board of Directors, or any member thereof, issued the certificate of deposit in question, which is as follows:

"PEOPLES BANK OF KEYSER

No. 308                    Keyser, W. Va., Dec. 28, 1921.
    B. H. Dundon has deposited in this bank Fourteen Hundred & No-100 Dollars payable to the order of Himself with interest at 3 per cent. per annum if left for four months on return of this certificate properly endorsed.    Not subject to check.
$1400.00                        T. D. Leps, Cashier."

The records of the bank do not show this transaction. A note of Dundon without indorsement for $1400.00 was taken by said cashier and placed in a private box of said cashier, and not discovered until some time after the bank was closed.

One of the witnesses, J. Frank Duke, who had been with the Maryland Finance Corporation since May 22, 1921, as bookkeeper and general office man, stated that Dundon presented his resignation as vice-president and general manager of the corporation on December 5, 1921, and that the Board of Directors accepted it as of the 5th on the 7th day of December, 1921; that Dundon was paid his regular salary by said corporation up until the 31st day of December, 1921, and that since that time has had no connection with said corporation.

On January 6, 1922, Dundon sold said certificate of deposit, which showed on its face that $1400.00 was held by the Peoples Bank of Keyser subject to withdrawal, on proper endorsement (at any time at sacrifice of interest), with interest at the rate of 3 per cent. per annum if left for four months, to the Maryland Finance Corporation (from which he, Dundon, had just withdrawn as an executive officer), for the sum of $1315.00, or at a discount of $85.00. The Commissioner of Banking of this State, on April 27, 1922, closed the doors of the Peoples Bank of Keyser, because of the fraudulent and unauthorized issuance by the said T. D. Leps,

its cashier, of this and other certificates of deposit. On the following day the said certificate of deposit was protested at the First National Bank, in Keyser, W. Va. A certificate of deposit, similar to the one in question, also issued by Leps, without authority, to E. J. Wiley, and sold to the plaintiff corporation, for $2300.00, dated December 2, 1920, at the same rate of interest if left for three months, was introduced in evidence. This $2300.00 certificate bore the following notation on its face: "Protested for non-payment at The First National Bank, Keyser, W. Va., Mar. 2. 1921." This was relied on to impute knowledge to the plaintiff of prior defective paper of the defendant bank. The Maryland Finance Corporation claims, however, that it did not know of this protest, and Duke states that the books of that corporation show that the same was paid on March 3, 1921, but that such record fails to state by whom paid, or how paid. Duke further testifies that the Maryland Finance Corporation had purchased approximately $20,000.00 worth of certificates of deposit issued by the said Peoples Bank of Keyser. The bank's records show none of these transactions.

The defendant bank relies on the following as error: (1) That the court erred in holding the plaintiff to be a holder in due course, without notice, of a valid negotiable instrument, and as such entitled to recover on it, notwithstanding the equities of antecedent parties, when the evidence shows that plaintiff had knowledge prior to purchasing the certificate sued on, through B. H. Dundon, its then vice president and general manager, of the fact that T. D. Leps, defendant's then cashier, was fraudulently issuing certificates of deposit in the name of the defendant Bank; and (2) that the court erred in entering the judgment complained of, when the evidence showed that the certificate of deposit sued on was a forgery and issued by Cashier Leps without authority.

A certificate of deposit ordinarily is defined as a written acknowledgment by a bank or a banker of receipt of a sum of money on deposit, which the bank or banker promises to pay to the depositor, to the order of the depositor, or to some

other person or to his order, whereby the relation of debtor and creditor between the bank and the depositor is created. 3 R. C. L., sec. 198. A certificate of deposit being in legal effect a promissory note is transferable by indorsement, when negotiable in form, in the same manner and with the same results as other negotiable paper. *Hatch* v. *Bank*, 94 Me. 348; *Read* v. *Bank of Buffalo*, 136 N. Y. 454; *Lindsey* v. *McClellan*, 18 Wis. 481. The *bona fide* purchaser of a certificate of deposit for value, before maturity without notice of equities, is therefore protected to the same extent as an innocent holder of other negotiable paper. 3 R. C. L., sec. 203, and cases there cited.

It is not disputed that the certificate of deposit involved in this suit was obtained by fraud, and that the title of the payee was defective within the meaning of the Negotiable Instrument Act (Code, chap. 98A). Under such conditions the following provisions of the act are applicable:

> Sec. 59. Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course; but the last mentioned rule does not apply in favor of the party who became bound on the instrument prior to the acquisition of such defective title.

> Sec. 52. A holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

> Sec. 56. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same the person to whom it is negotiated must have had actual knowledge of

the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.

In this case the plaintiff, according to the testimony of its bookkeeper, Duke, acquired the paper in question before maturity and for value. The only inquiry is whether it accepted it without knowledge of the fraud in its origin, or of such facts as would subject it to the imputation of bad faith in the transaction. Those who seek to secure the advantages which the commercial law confers upon the holders of negotiable paper must bring themselves within the conditions which that law prescribes to establish the character of a *bona fide* holder. They are entitled to the benefits of that rule only when they have purchased such paper in good faith. This is the law. It is incumbent upon the holder to show the circumstances under which it came into his possession, and that he has acted in good faith in the transaction. The burden of making out good faith is always upon the party asserting his title as a *bona fide* holder in a case like this, where the proof shows that the paper has been fraudulently and illegally obtained. Such party makes out his title by presumptions, until it is impeached by evidence showing the paper had a fraudulent inception; and when this is done the plaintiff can no longer rest upon the presumption, but must show affirmatively his good faith. 8 C. J. 506; *Lewiston Trust Co.* v. *Shackford,* 213 Mass. 432; *Com. Security Co.* v. *Archer,* 179 Ky. 842; *Kenny* v. *Walker,* 29 Ore. 41. To uphold the ruling of the trial court in finding for the plaintiff, it must appear that the plaintiff has established the good faith of the transaction by the evidence. *Beachy* v. *Jones,* 108 Kan. 236. The testimony of the bookkeeper of the plaintiff corporation, that he, for the corporation, purchased the certificate for value, before maturity, even though he be not disputed by any other witness to the transaction, is not necessarily sufficient to enable the court to say that he received it in good faith. *Connelly* v. *Greenfield Bank,* 192 Iowa 876. Our court, in *Bank* v. *Harden,* 83 W. Va. 119, held that, on the question of "good faith and for value" required of a purchaser in due course, mere knowledge of facts sufficient to

create suspicion, without actual knowledge, will not deprive him of the rights of a purchaser in due course, but if the facts, circumstances and conditions attending his purchase are so cogent and obvious that to remain passive amounts to bad faith on his part, and show bad faith on the part of the seller, the purchaser will be deprived of the status of holder in due course. Where the taint of fraud once attaches to a written contract, negotiable or otherwise, the law is careful to require every person who seeks to profit by it to show that he comes into court with clean hands. "It would be a departure from principle," says the Supreme Court of Indiana in *Giberson* v. *Jolley,* 120 Ind. 301, "to hold that the maker must prove that the holder had notice of the fraud. Whether he had notice or not is a matter peculiarly within his own knowledge. It needs no more than a bare statement of the proposition that the plaintiff's possession or non-possession of notice is a matter peculiarly within his own knowledge, to establish it to the satisfaction of a candid mind, and, if this proposition be established, then, it must follow that the proof should come from him, for few rules of law are better settled than that a party whose cause of action or defense rests upon facts peculiarly within his own knowledge, must prove those facts." While it is not to be presumed that a witness will testify falsely, yet it may be presumed that the testimony of a party will more or less be colored by his interest or bias; and, generally speaking, where such testimony is offered to overcome an unfavorable presumption of law or evidence, or to satisfy the burden of proof which the law casts upon him, the question as to his credibility and the weight and effect of his testimony must be taken into consideration. *McKnight* v. *Parsons,* 136 Iowa, 390.

The instant case turns on the question of whether the Maryland Finance Corporation took the paper in good faith. Dundon, the payee in the certificate of deposit, and who sold it to said Finance Corporation had been vice president and general manager thereof. He left the employ of the company on December 6, 1921, but remained on the payroll of said company until December 31, 1921. While thus associated

with the plaintiff corporation he obtained from a small bank in another state on December 28, 1921, the certificate of deposit in question. We are not so credulous as to conclude from all the facts surrounding the transaction that Dundon did not know that Leps was acting without authority and that the bank contained no record of the transaction. With this knowledge of the vice of the paper he sold it to the corporation, with whom he had been long associated, on the 6th day of January, 1922. It is well settled that a general business relation between the payee and the holder may be considered as giving character to a particular transaction, and as affording an inference that a paper discounted within it was so discounted with constructive notice of any existing infirmity. *Merriam* v. *Bank,* 8 Gray, 254; *Bank* v. *Goodsell,* 107 Mass. 149; *Clark* v. *Roberts,* 206 Mass. 235; *Lewis* v. *Western Stock Remedy Co.,* 170 N. W. 536; *Gebby* v. *Carrillo,* 25 N. M. 120; 177 Pac. 894. The plaintiff paid Dundon $1315.00 for what was represented on the face of the certificate to be a cash deposit of $1400.00. This substantial discount would naturally suggest the question to the prudent business man, why would Dundon sell a certificate of deposit at $85.00 less than its cash value? Yet this record does not show that any inquiry was made by the plaintiff company to secure an answer. No information was obtained or sought as a reason for this action. Is it not strange that Dundon, who lived in Baltimore, and had formerly been identified with the plaintiff corporation, as an officer, would deposit his money in a small bank in another state, secure a certificate of deposit, and then return to his home city and negotiate a sale of said certificate at an unusual discount to the company with whom he had been formerly identified? The fact that he was willing to take this substantial discount would repel the presumption that he had made a cash deposit of $1400.00. If not cash, then on what terms did he obtain such certificate of deposit? Would not this question naturally arise in the mind of the prudent business man to whom the paper was offered for sale? In *Fidelity Trust Co.* v. *Whitehead,* 165 N. C. 74, the fact that a note of $1624.00

was sold for $1490.00 was held to be evidence of bad faith. As the court said, in *Millard* v. *Barton*, 13 R. I. 601, in a, similar case, even if the purchaser did not know of any equities between the original parties, the sale of a note for a sum much below its face value is a circumstance tending to show that he wilfully shut his eyes to the means of knowing the facts. On the question of good faith of the corporation, the letter of Dundon to Leps on August 13, 1921, is of evidentiary force. It is significant that he signed this letter in his official capacity of vice president and general manager. It contained among other things these words: "The writer could pay $100.00 for a $1000.00 C-D due in four months, if you can handle same." Had the certificate of deposit there sought at that time been obtained in the manner that the one here under question was obtained, and sold by Dundon to his company, the said corporation would have surely been charged with notice of the infirmity of the paper. *Grebe* v. *Swords*, 28 N. D. 330. This was the inception of the fraudulent transactions which culminated in the issuance of the certificate of deposit in controversy. Yet, Dundon was not called as a witness by the corporation. In an action on a check given without consideration, evidence that the holder paid value for it is not conclusive as to the *bona fides* of the transaction; and where there are many suspicious circumstances and the original payee, though easily accessible as a witness, was not called, the *bona fides* is unsustained, and a judgment for the plaintiff will be reversed. *Tischler* v. *Shurman*, 97 N. Y. S. 360. The Wiley certificate had the same vice of the Dundon certificate. It was likewise purchased by the plaintiff corporation. It was shown to have been protested. No one connected with the plaintiff corporation, at the time that the Wiley certificate was sold to it or charged off, testified. Duke did not enter the employ of the corporation until some months after this transaction closed. True, he testified that the books showed that it was paid the next day after it bears the marks of protest on it. No offer of the entry of such fact, however, was introduced in evidence in the usual course. Daniel on Nego-

tiable Instruments, at section 796, is quoted approvingly in *Bank* v.. *Ohio Valley Furniture Co.*, 57 W. Va. 631, as follows: "If the circumstances are of such a character as to create a distinct legal presumption and *prima facie* proof of fraud, or of some equity between prior parties, it would operate as legal information and constructive notice to the transferee. This rule fixes a criterion for judgment which is definite, and seems to us the one which should be adopted." In support of his text the author cites a large number of authorities which fully sustain his position. Charged by the law in this case of showing facts constituting good faith, has the plaintiff corporation borne the burden cast upon it? It is not the mere denial of knowledge that entitles it to a finding in its favor on such an issue. But the circumstances under which it took the paper and which it has the affirmative duty to prove after its fraudulent origin has been shown, must be wholly consistent with the theory that it was not guilty of bad faith in its acquisition. *Edelen* v. *Hagerstown Bank*, 139 Md. 413. The effect of the transfer to the plaintiff of the burden of proof on a question of this nature is to make it incumbent on it to prove the circumstances under which it acquired the instrument on which it seeks to recover. *Edelen* v. *Hagerstown Bank, supra; Canajoharie Bank* v. *Diefendorf*, 123 N. Y. 191. In the face of this duty the plaintiff corporation is content to rest its case on the unsupported oral testimony of one who states he "was a bookkeeper and general office man" of said corporation. The record of the corporation is not avouched in evidence to sustain him. His name does not appear among the officers of the corporation. It is not shown that he is an executive officer, entitled to speak for the corporation. It has been held that it must speak on a question of this character through such officer. Notice to such officer would be notice to the corporation. *Bushnell Bank* v. *Buck*, 161 Iowa 362. The plaintiff is attempting to collect the contested paper from a bank in another state, while the record discloses no effort to obtain payment from Dundon, who discounted the

paper, and who resides in the same city with the holder. In *Savings Bank* v. *Walker,* 82. Conn. 24, such a state of facts was held to be evidence tending to show that there was an understanding and co-operation between the plaintiff and the transferor in the collection of the negotiable paper. The plaintiff seems to have eliminated the element of good faith in the transaction and assumes that the language, "a holder for value," as used in the authorities, is satisfied by proof that the certificate of deposit was purchased before maturity, and value paid therefor. This contention does not find support in the authorities. In view of all the facts and circumstances in this case we are not prepared to affirm that the plaintiff has met the requirement of the authorities in showing the element of good faith essential to a recovery here.

Having come to this conclusion, a consideration of the second point of error assigned is not required. We therefore reverse the judgment of the circuit court and enter judgment here for the defendant.

*Reversed and rendered.*