# CHARLESTON.

Baker *v.* Cole, *et al.*

(No. 6678)

Submitted April 15, 1930.    Decided April 22, 1930.

*Scott, Graham & Wiswell,* for appellant.
*L. L. Wilson* and *George I. Neal,* for appellees.

HATCHER, JUDGE:

In a suit to settle the estate of Enoch Baker, late of Huntington, W. Va., a claim of L. G. Levee of Baltimore, Md., amounting to $91,838.34, principal and interest on certain notes, was allowed. This appeal involves that allowance.

Levee presented to the commissioner through a local agent three notes, for $25,000 each, executed by D. B. Langley on January 2, 1926, payable to Baker at Jacksonville, Fla., in one, two, and three years from date. Enoch Baker's name is endorsed on the back of the notes. An affidavit of Levee accompanied the notes for the purpose of proving his claim, under Code, c. 129, § 11. The administratrix filed a counter affidavit denying the correctness of the claim. She also filed an amended bill alleging fraud in the negotiation of the notes, and that the endorsement on the notes was not that of her husband, and demanding that Levee answer certain interrogatories, or appear personally and submit to an examination. He did not comply with this demand, but filed an answer denying fraud and explaining his connection with the notes. He alleged that he acquired the notes from Joe Garver of Baltimore on February 22, 1928, for valuable consideration (it will be observed that two of the notes were overdue on this date); that Garver now resides in Cleveland, Ohio; that he acquired them from Baker for valuable consideration;

that Garver refused to indorse them because he did not want to become personally responsible for them, and that the signature on the back of the notes is that of Baker. The plaintiff replied generally to the answer, thus putting the defendant on proof. See record, p. 103. He took no proof supporting his allegations, but submitted three letters, dated April 8, April 21, and September 1, 1926, respectively, addressed to D. B. Langley, Jacksonville or Miami, Fla., and signed ''Enoch Baker.'' Two of the letters referred to the notes. The widow of Baker testified that the signature to the letters looked like that of her husband, but that she knew nothing about the letters or the notes, except that, after the death of her husband, she received a letter dated March 22, 1928, from Norfolk, Va., signed by D. B. Langley inquiring about the notes, and stating that they represented Baker's ''contingent interest'' in a Florida real estate promotion which had ''gone bad.'' Mrs. Baker replied to the letter, but heard nothing further from Langley. Her attorneys diligently attempted without success to locate him in Norfolk.

Mr. Baker died in March, 1928, aged eighty-six years. The books and records left by him disclose nothing whatsoever regarding this transaction. His entire personal estate amounted to $83.55. He left local obligations aggregating about $1,800. He was the equitable owner of certain vacant lots in Huntington of the value of $20,000, subject to liens amounting to about $5,000. Colonel George Wallace of Huntington, an attorney of high standing, testified that he had been an intimate friend of Baker for many years; that he knew generally Baker's financial condition; that Baker was practically without funds for several years prior to his death, during which time he conversed with the witness at every opportunity but never mentioned the notes, or Langley, or Levee; that Baker had the ''mind of a child,'' in that no one ever came to him with a ''hard luck story that the old man would not help''; that he would ''sit and cry and quarrel and fuss'' about a certain adverse court decision; and that his general condition grew worse up to the time of his death. Colonel Wallace detailed several business transactions which he handled for

Baker in the latter years of his life, showing that Baker was continuously in sore need of money, and tending to prove that if he had owned the notes, it would assuredly have been disclosed. Another witness testified that for five years prior to Baker's death he was unable to pay any actual money for board and the room occupied by him and his wife. She testified that during that period she "went out to work some."

If we overlook Levee's failure to prove the signature (endorsement) of Baker on the notes; if we accept Mrs. Baker's inconclusive evidence as proving that Baker signed the letters to Langley and assume that a comparison of signatures will demonstrate that Baker endorsed the notes, still Levee has failed to make a case. Upon the filing of the counter affidavit before the commissioner, Levee was then required by section 11, supra, "to produce his witness or witnesses before the commissioner · * * * in like manner as if no affidavit or affidavits had been filed." He would excuse his noncompliance with the statute on the theory that his mere possession of the notes entitles him to recover as "a holder in due course" under section 59 of the Negotiable Instrument Law (chapter 98A, Code.) If we concede, merely for the sake of argument, that section 11, supra, does not apply to one in the possession of negotiable paper, then Levee is confronted with section 55 of that law. This section declares the title of any person negotiating an instrument to be defective "when he obtained the instrument or any signature thereto, by fraud * * * or under such circumstances as to amount to a fraud." The circumstances surrounding this transaction are indeed "passing strange." It is exceptional that an impecunious, garrulous old man should have an interest in land worth $75,000, or in notes of that face value and never mention it to his wife or intimate friend and counselor; it is remarkable that Garver, of Baltimore, should acquire notes of the face value of $75,000 from Baker, of Huntington, without leaving any trace whatsoever of the negotiations, and without the purchase being reflected in some way in Baker's financial condition; it is unusual that Levee should purchase those notes, two of which were overdue, without requiring Garver's endorsement; it is

singular that at the opportune moment the man from Baltimore should be able to produce letters purporting to have been written several years ago by Baker to a man in Florida; and it is extraordinary that Baker should have parted with anything of value for the unsecured notes of the elusive gentleman identified herein only by his connection with a deflated land boom (Langley), and that a seeming stranger (Garver) should have haply purchased the notes from Baker, and then found therefor a credulous buyer (Levee), who alleges he never knew their maker and advances no claim that he was acquainted with their alleged endorser. Each of these circumstances is possible, but none is probable. Any one circumstance, alone, might not warrant mistrust. But such a recurrence of improbable events raises a strong suspicion of fraud, and renders Levee's title defective within the meaning of section 55, supra. The presumption of good faith in Levee's favor as a holder of the notes is therefore overcome and he must carry the burden of establishing a valid title. "When it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course." Section 59, Negotiable Instrument Law. This section is but declaratory of the common law. 8 C. J. p. 983, etc., §§ 1291, 1292. In discussing just such a situation, Daniel on Negotiable Instruments (6th Ed.) § 815, says: "There may be at this juncture a shifting of the burden of proof from the defendant to the plaintiff, for the principle is well established that * * * if the circumstances raise a strong suspicion of fraud or illegality, the owner must then respond by showing that he acquired it (the instrument) bona fide for value, in the usual course of business, while current, and under circumstances which create no presumption that he knew the facts which impeach its validity." See, also, *Finance Corporation* v. *Bank,* 99 W. Va. 230, 236, 237, 128 S. E. 294; *Smith* v. *Sac County,* 11 Wall. 139, 147, 20 L. Ed. 102; *Bank* v. *Hatcher,* 94 Va. 229, 26 S. E. 505; *Bank* v. *Burgwyn,* 108 N. C. 62, 12 S. E. 952; *Owens* v. *Snell,* 29 Or. 483, 489, 44 P. 827; *Mendenhall* v. *Ulrich,* 94 Minn. 100,

103, 101 N. W. 1057; 3 R. C. L., p. 1042, § 247; note 11 Am. St. Rep. page 324.

Because of Levee's failure to assume the burden of proof cast on him by law under the circumstances, the judgment of the circuit court is plainly wrong. It will accordingly be reversed and the cause remanded.

*Reversed and remanded.*