WILLIAM S. CLARK *vs.* AUGUSTUS O. ROBERTS & others.

Hampshire.  March 10, 1910. — June 24, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Equity Jurisdiction,* Equitable pledge, Rights of *bona fide* purchaser from fraudulent seller. *Fraud. Equity Pleading and Practice,* Bill, Issues to jury, New trial.

In order for one, who owned a mortgage note and mortgage and, having indorsed the note in blank and executed an assignment of the mortgage, delivered both of them to one as security for a loan, to recover them after payment of the loan

from one who holds them by virtue of a conveyance by the assignee for value, he must show that the holder did not receive them in good faith, and, while he need not in all cases show that the holder when he received them actually knew of the lack of title on the part of the assignee, nevertheless it is not sufficient for him to show that the holder when he took them had reasonable cause to believe that they were held by the assignee as collateral security only.

When in a suit in equity issues are framed for a jury and the findings of the jury thereon do not dispose of all the issues necessary to a decision of the suit, the proper course is for the judge to hear the remaining issues unless on application he in his discretion should frame further issues to be tried by a jury.

A bill in equity against two defendants alleged that the plaintiff was the owner of a certain mortgage and mortgage notes for $6,700, that he assigned them to one of the defendants as security for a loan of $1,200, that the assignee wrongfully assigned them to the second defendant, who at and before the time of such assignment "knew or had reasonable cause to believe that said notes and mortgage were not the absolute property" of the first defendant, "and that they were the property of the plaintiff held by" the first defendant "as security only"; that the $1,200 loan had been paid, and that the notes and mortgages should be returned to the plaintiff. Issues were framed upon which a jury found that the first defendant had received the notes and mortgage as security only, and that at the time of the assignment to the second defendant the second defendant did "know or have reasonable cause to believe that the notes and mortgage were held" by the first defendant "as collateral security." Thereafter, upon the second defendant objecting that the fact that the second defendant had "reasonable cause to believe" that his assignor held the notes and mortgage as security only was not enough to make him a party to the fraud and that the finding of the jury was consistent with such being the fact, the judge before whom the issues were tried, without setting aside the jury's findings, heard further evidence on the question whether the second defendant had actual knowledge of the fraud and, having found that he had such knowledge, ordered a decree for the plaintiff and reported the case. *Held;* that the issue upon which the judge heard the additional evidence was not inconsistent with those upon which the jury already had passed, and therefore, since the findings of the jury did not dispose of the case on the merits, it was proper for the judge to hear and to pass upon the additional evidence without setting aside the findings of the jury.

In this suit in equity by a mortgagee to redeem the mortgage and the mortgage note, which had been transferred by the plaintiff as security for a loan by an assignment absolute in form and had been assigned fraudulently by the assignee to an alleged purchaser, a finding was warranted by the facts which appeared in evidence that the alleged purchaser from the fraudulent assignee was not a real purchaser, but that the alleged sale to him was colorable only; or it might have been found that such alleged purchaser supplied the money with which the fraudulent assignee paid for the assignment to him from the plaintiff, that the entire transaction was on his account, and that the knowledge of the fraudulent assignee was the knowledge of the alleged purchaser from the beginning, so that the plaintiff was entitled to the relief which he sought.

LORING, J.   This case comes before us on a report.

It appears from the report that just before March 7, 1905, the plaintiff was the holder of six notes, aggregating $6,700, se-

cured by a second mortgage on a lot of land and a building thereon situate in Holyoke. The first mortgage was $6,000 and the property was assessed for $11,600. These notes were signed by the defendant Winkler as maker of them and were payable on the first day of January in successive years up to and including January 1, 1911. On March 7, 1905, the plaintiff delivered these notes indorsed in blank to the defendant Roberts and assigned to him the mortgage conditioned for the payment of them. The plaintiff's claim was that these notes and the mortgage securing them were transferred and assigned as collateral security for a loan of $1,000 then made by Roberts to the plaintiff. He testified that he agreed to pay Roberts a bonus of $200 for making the loan and six per cent interest on the whole sum of $1,200. Roberts's claim was that he bought the $6,700 mortgage notes for $1,000.

The interest, amounting to $167.50, due on July 1, 1905, was paid by Winkler to Roberts at maturity. One note for $1,000 and the interest due thereon and the interest due on the balance of the mortgage debt (amounting to $142.50) was also paid by Winkler to Roberts on January 1, 1906. The plaintiff testified that on February 22, 1906, he wrote to Roberts stating that the sums received by him on the collateral more than paid the amount due under the loan, asking for a return of the " papers " and a check for the balance. To this the plaintiff received no answer. Roberts testified that he never received it. The plaintiff testified that he called at Roberts's office a number of times during the next eight months, but never found him there. The mortgage interest (amounting to $142.50) was paid by Winkler to Roberts on July 2. The plaintiff finally found Roberts at his office on December 17. Roberts then asserted that the plaintiff sold him the mortgage notes and this bill was filed on the same day. The plaintiff testified that Roberts told him at this interview on December 17 that he then had the mortgage notes in his possession and never had assigned them. On the advice of his attorney the plaintiff had made a search in the registry of deeds in November and found that there was no record there of an assignment of the mortgage. But it appears that on December 21, 1905, (a year before the bill in equity here in question was filed,) Roberts executed an assignment of

the mortgage to the defendant Baker and acknowledged it on that day. This assignment never has been recorded. The plaintiff amended his bill in January, 1907, by adding an allegation on information and belief that the defendant Baker had the mortgage notes and mortgage in his possession and that he was "claiming them as his own." By a subsequent amendment allowed in July, 1907, the plaintiff alleged that "At and before the time of the alleged sale by said Roberts to said Baker, said Baker knew or had reasonable cause to believe that said notes and mortgage were not the absolute property of said Roberts and that they were the property of the plaintiff and held by said Roberts as security only."

On motion of the plaintiff three issues were framed to be tried by a jury, namely: (1) Was the transfer by the plaintiff to Roberts an absolute sale? (2) Was that transfer made as collateral security for money lent by Roberts to the plaintiff? and (3) If the transfer was made as collateral security "did the defendant Baker, at the time of or before the assignment of said notes and mortgage to him by said Roberts, know or have reasonable cause to believe that notes and mortgage were held by said Roberts as collateral security?"

At the trial of these issues [*] the jury answered the first in the negative and the other two in the affirmative.

Thereafter the cause was sent to a master [†] to find the amount due the plaintiff "based upon the verdict of the jury," and on June 1, 1908, he reported that amount to be $222.63.

On October 20, 1908, the defendant Baker filed a motion that a decree be entered dismissing the bill as against him on the ground that the fact that he had reasonable cause to believe that Roberts held the notes and mortgage as collateral security did not deprive him of his standing as a *bona fide* purchaser for value without notice. Thereupon the plaintiff asked to be allowed to prove that the defendant Baker had "actual knowledge" of that fact. The defendant Baker objected to this unless all the findings of the jury were vacated. The judge ordered a hearing on the issue of Baker's "actual knowledge," without

---

[*] Before *Dana,* J.        [†] John W. Mason, Esquire.

vacating the jury's findings, and reserved Baker's rights raised by his objection to that course of proceeding.

The case was then heard on this issue by the same judge who presided at the trial before the jury. The result of this hearing was a finding that Baker had " actual knowledge " of the fact that Roberts held the notes and mortgage as collateral security when they were assigned to him.

An order was made for a final decree (1) declaring that the notes and mortgage belong to the plaintiff; (2) directing Baker to return the notes to the plaintiff and Roberts and Baker to execute and deliver to him an assignment of the mortgage; (3) directing Roberts and Baker to pay to the plaintiff $222.62 and interest thereon from July 1, 1906, and his costs of suit; and (4) directing the plaintiff to pay to the defendant Winkler $50 for his costs and attorney's fees.

Since the findings were made by the jury Baker alone has made defense in the suit. The questions submitted to us by this report are: (1) The refusal of the judge to dismiss the bill as against Baker on the findings of the jury; (2) the right of the judge to hear the issue of " actual knowledge " at the time he did and without vacating the answers of the jury; (3) whether the evidence warranted the finding made; and (4) various rulings on the admission of evidence.

Baker is right in his position that the bill alleging in the alternative " actual knowledge " or " reasonable cause to believe " did not state a case. " Reasonable cause to believe " that his assignor had no title is not inconsistent with a purchase in good faith without notice of that fact. *Pierce* v. *O'Brien*, 189 Mass. 58. Baker is also right in his position that the finding of the jury left the matter where it was left by the allegations of the bill. But when in a suit in equity the findings of a jury do not dispose of all the issues necessary to a decision of the suit, the proper course is for the judge to hear the remaining issues unless on application he in his discretion should frame further issues to be tried by a jury. This rule applies to the situation in this case. Doubtless in an action at law it would have been necessary to set aside the findings by the jury. But that is not the case in a suit in equity unless the further hearing is on a

fact inconsistent with the finding by the jury. That was not so in the case at bar.

The other questions submitted to us are questions raised by rulings on evidence and the question whether the evidence warranted the finding made, namely, that Baker had "actual knowledge."

It seems to have been assumed that since the defense of a purchase for value and in good faith without notice (which was negatived by the plaintiff in his bill) is not defeated by showing that the defendant had reasonable cause to believe, the plaintiff had to prove that the defendant had actual knowledge. That is not so. For example, one who is put on inquiry and wilfully shuts his eyes is not a purchaser in good faith without notice so as to get a better title than his assignor had although he never had actual knowledge of his assignor's defect of title. And it also seems to have been assumed that the question and the only question on which this defense depended in the case at bar was knowledge on the part of the defendant Baker.

The decision of these questions requires a short statement of the evidence. There was strong evidence of a determination from the outset to cheat the plaintiff out of his mortgage notes. This is found in the paper signed by the plaintiff and Roberts * on the day of the transfer of the notes and the assignment of the mortgage to Roberts. The plaintiff testified that after he had received the $1,000 to be paid him by Roberts under the terms of the loan, he asked Roberts for a note to sign for the loan. That Roberts said that he was not in the habit of having notes given to him and that he simply made an entry in his ledger, and that he (Roberts) thereupon wrote something in a book which the

---

* "Received from Augustus O. Roberts, the sum of twelve hundred ($1,200) dollars in consideration of a certain mortgage given to and held by me from one Frederick A. Winkler and recorded in Hampden County registry of deeds in book 696, page 224, and for the said consideration of $1,200 above mentioned I have this seventh day of March, A. D. 1905, assigned the said Winkler mortgage to the said Roberts. [Signed] William S. Clark. This is to certify that I have this seventh day of March, A. D. 1905, received the above mentioned mortgage by assignment from the said William S. Clark. [Signed] Augustus O. Roberts."

plaintiff did not see. The plaintiff then asked him for something to show that he (the plaintiff) had borrowed $1,000 of him, "and after a while he went into another room and spent considerable time at the typewriter, and returned" with the paper referred to above. No explanation was given by Roberts when he was on the stand why the sum named in this paper was $1,200 if the whole transaction between him and the plaintiff was a sale of the mortgage notes for $1,000. No explanation of that can be given if that is true. An explanation of it however is to be found in the plaintiff's testimony.

Again Roberts knew that if the sums due on January 1, 1906, (under the mortgage debt held by him under assignment from the plaintiff,) were paid, his loan to the plaintiff (if it was a loan) would be paid. It was just before that date (December 21, 1905) that he executed and acknowledged an assignment of the mortgage to Baker. For some reason which Roberts could not explain on the stand he had filled in the blank in this assignment so that it read: "I Augustus O. Roberts . . . assignee and owner of" a certain mortgage, etc. That is not the usual way of filling up such a blank and might be thought to be an attempt by Roberts to make evidence in his own favor. This assignment never was put on record. Baker was not a stranger to Roberts. For ten or twelve years they had shared the same suite of offices. Roberts was in the real estate business, Baker was treasurer and general manager of the Hampden Paint and Chemical Company and dealt in tax titles and in lending money. The evidence warranted a finding that this business of Baker's was attended to in large part at least by Roberts. Baker had as much as $100,000 in the business of lending money alone. At one time Roberts was in the employ of the Paint and Chemical company. On the day of the assignment by the plaintiff to Roberts, (March 7, 1905,) Baker drew from his bank $1,000. It was agreed that the check should be produced at the argument before us. But it was mislaid by counsel and was not produced. It and the other exhibits should have been printed as part of the report. Baker testified that he "drew cash on that check and paid it out for a United States Whip bond, a six per cent Whip bond from William P. Mattoon." But Mr. Mattoon did not testify in corroboration of this story, neither was this testimony

of Baker corroborated in any other way ; and there was no evidence as to where the $1,000 paid to the plaintiff came from if it did not come from the cashing of this check.   The story told by Roberts and Baker was that the purchase price to be paid by Baker to Roberts on December 21, 1905, was $500 in cash, the surrender of certain notes amounting to $2,000 made by one Merrill, guaranteed by Roberts, and an agreement that he (Roberts) should have the $1,000 note due January 1, 1906, and the interest on the balance of the mortgage debt due on that day.   Roberts testified that his guarantee on these notes was " in a way " " a debt of honor " and nothing more.   The Merrill notes were not produced at the hearing.   Nor was a check for the $500, or any other evidence of the payment of it put in evidence. There was no corroboration of this transaction.   In addition to the plaintiff's testimony that Roberts told him in December, 1906, that the mortgage notes were then in his possession and that he never had assigned them, Roberts wrote to Winkler on December 29, 1905, telling him that he had deposited in bank for collection the $1,000 note due January 1, 1906, and directing him to send to him (Roberts) a check for the interest due on the balance of the mortgage debt.   This came in a stamped envelope of the Paint and Chemical Company.   The evidence showed that on March 7, 1905, Roberts went out to get the $1,000 and came back with $1,000 in bills.   He was gone from ten to fifteen minutes, and there was evidence that there were two banks in the vicinity of the building in which the suite of offices shared by Roberts and Baker were situate, and that it would not take over ten or fifteen minutes to go to either of them.

The only thing that might be thought to help the defendant Baker is the indorsements on the six notes.   They are all indorsed by Roberts.   That due on January 1, 1906, is also indorsed by Baker, and in addition (a stamp indorsement) by the City National Bank, Springfield, Massachusetts.   That due on January 1, 1907, is indorsed by Baker and also (by a stamp indorsement) by the Union Trust Company, Springfield, Massachusetts.   But if it could be found that the assignment of December 21, 1905, was made for a purpose, it also could be found that that purpose included Baker's going through the form of acting in accordance with the assignment.   Baker was unable to

explain why he expected to buy for $500 and the surrender of a debt of honor for $2,000, second mortgage notes for $5,700 where the first mortgage was $6,000 and the property was assessed for $11,600.

This evidence warranted a finding that Baker was not a purchaser in good faith of these mortgage notes.

The natural inference from these facts is perhaps that there was no real purchase by Baker on December 21, 1905. But this evidence also warranted a finding, that the $1,000 originally paid to the plaintiff by Roberts was Baker's money, that the transaction of March 7, 1905, was on his account, and consequently that Roberts's knowledge was his knowledge from beginning to end. In that case knowledge was chargeable to Baker of all that Roberts actually knew, and we construe that to be the meaning of the judge's finding.

In that case the evidence admitted *de bene* of what Roberts did and said when Baker was not present was properly admitted as against Baker.

*Decree affirmed.*

*J. B. O'Donnell*, for the plaintiff.

*J. W. Allen*, (*C. G. Gardner & G. C. Arvedson* with him,) for the defendant Edmund K. Baker.