### SMITH v. HUBBARD.

1. BILLS AND NOTES—CERTIFIED CHECKS—HOLDER IN DUE COURSE —PRINCIPAL AND AGENT.

    In an action against a bank on a certified check, where the undisputed testimony shows that plaintiff received the check from the holder's attorney in payment for 80 acres of land, the court below properly found that the attorney was agent of the holder.

2. SAME—FRAUD—NOTICE—HOLDER IN DUE COURSE.

    The validity of a certified check in the hands of a holder in due course would not be affected by the fact that, as between the bank and the drawer, the certification was a nullity and in violation of law.

3. BANKS AND BANKING—PRIVATE BANKS—POWERS OF CASHIER— CERTIFIED CHECKS.

    The cashier of a private bank holding itself out to the public as a bank and operating as such, has inherent authority to certify checks and bind the bank thereby to the same extent as though it were duly incorporated.

4. BILLS AND NOTES—CERTIFIED CHECKS—PRESENTMENT—RULES.

    Rules relative to prompt presentment for payment of ordinary checks do not apply to certified checks, since they are not expected to be as promptly returned, but are

See notes in 9 L. R. A. (N. S.) 698; 29 L. R. A. (N. S.) 205.

certified in order that they may be used as a substitute for money.

5. SAME—HOLDER IN DUE COURSE—DUTY TO INVESTIGATE.

Where a certified check was, on its face, under the law, an absolute undertaking of the certifying bank to honor it when presented for payment at any time before barred by the statute of limitations, no obligation rested upon one to whom it was offered in due course of business, to, at his peril, make investigation into the reason for, and circumstances of, its certification.

Error to St. Clair; Law, J. Submitted January 14, 1919. (Docket No. 31.) Decided April 3, 1919.

Assumpsit by Charles Smith against Frank W. Hubbard and others, copartners as the Palms Bank of Frank W. Hubbard & Co., for the amount of a certified check. Judgment for plaintiff. Defendants bring error. Affirmed.

*W. T. Bope,* for appellants.

*Moore & Wilson,* for appellee.

STEERE, J. In this action, commenced in the circuit court of St. Clair county, on October 18, 1917, plaintiff recovered a judgment against defendants in the sum of $1,036.25 upon the following certified check:

"PALMS, MICH., July 27, 1915.

"No......

    "PALMS BANK OF FRANK W. HUBBARD & CO.

"Pay to the order of E. W. Mapes.........$1,000, one thousand dollars.

"ELI SAWDON."

Across the face of this was written the following:

"Good when properly endorsed.

"B. D. WRIGHT,<br>"Cash. July 27, '15."

Indorsed upon the back of said check were the following names, in the following order: E. W. Mapes, Eli Sawdon, Flavel G. Briggs.

On July 27, 1915, when this check was certified, defendants were and had been for a number of years conducting a general banking business at Palms, Mich., under the name of the "Palms Bank of Frank W. Hubbard & Co."

Bert D. Wright was and had been cashier of said bank for about 7 years. Eli Sawdon and his father-in-law, E. W. Mapes, were customers of said bank, and partners engaged in taking drainage contracts in different parts of the country. Flavel G. Briggs, one of the indorsers, was and is a resident of Arkansas, to whom Sawdon became indebted and delivered the check as collateral security to notes given therefor. Plaintiff was and is also a resident of Arkansas, who received the check from Briggs' attorney in payment for an 80 acres of land purchased for Briggs. Briggs and plaintiff, who consecutively acquired this check each testified that he then had no knowledge of any claim against its validity but took the same in good faith for a valuable consideration on the strength of its being what it purported. Smith testified in part as follows:

"Q. I ask you if you are now the owner of this check?

"A. Yes.

"Q. What did you give in exchange for this check?

"A. Traded 80 acres of land. * * * I have had some experience in dealing with banks and checks. I accepted this check at face value because it was certified and written out in the usual manner and signed. I had no intimation that there would be any defense to the payment of said check."

The date of the check, certification and genuineness of signatures are conceded. The authority of Wright to certify the check and the innocence of plaintiff as holder are not admitted, and it is further contended that the delay which intervened between the time of issuance and time of demanding payment estops recovery.

In explanation of how this check, issued at Palms, Michigan, was put afloat in Arkansas, it is shown that Sawdon secured it from Wright to use in bidding at contract lettings for drainage work where certified checks are required to accompany the bid, and first sent it to his partner, Mapes, at Armada, Arkansas, for that purpose. He later went there with a dredge to do some drainage work and at Judsonia rented a house from Briggs, and while his tenant succeeded in borrowing some money from him, turning over to him this certified check for collateral security, as Briggs, and a Dr. Huntley of Judsonia both testify, and the court found, although Sawdon testified it was for safe keeping. Sawdon defaulted in payment, and learning the Palms bank declined to honor the check, Briggs employed counsel and brought suit on the paper in White county, Arkansas, against Sawdon, Mapes, Wright and the bank. Mapes, Wright and the bank avoided the action by a successful motion, before pleading, to quash the proceedings as to them because of defective service. Sawdon pleaded issuably and on trial judgment was rendered against him for $816.39, one of the findings in the judgment being that he had given Briggs the certified check as collateral to secure payment of the debt sued upon. Briggs then directed his attorney, Mr. Rachels, to realize for him upon the certified check as best he could, by either sale, suit or otherwise, and Rachels disposed of it to plaintiff in payment on a farm land purchase which he was negotiating with him for Briggs, assuring him that it was genuine and that if desired he would lend his professional assistance in putting it through the ordinary "due course of collection," which he did, and payment being refused by defendant this action followed.

The case was tried before the court without a jury, and on request of counsel findings of fact with conclusions of law thereon were filed. The court's find-

ings of fact, which we have to a degree outlined, are well sustained by the evidence, largely undisputed, and conclude as follows:

"At the time Smith accepted the check, he did not know that either the bank or Sawdon claimed the check to be invalid, nor did he have any reason to believe that the check was not good, nor anything to put him on inquiry as to its validity. At this time Attorney Rachels had been advised that Sawdon claimed Briggs had obtained possession of the check by a wrongful act and also that the bank claimed the check to be invalid."

Holding that under the undisputed evidence Rachels was agent of Briggs, and not plaintiff, when he paid the latter this certified check on the land purchase, the court found that plaintiff then became a *bona fide* holder of the check in good faith for full value and the bank was bound by its certification to honor it.

Defendants' assignments of error are directed against the court's conclusions of law, refusal to make certain requested findings of proven facts, and certain findings made which are claimed to be contrary to the evidence.

For full consideration of the case defendants were permitted to show, against timely objection by plaintiff, that, needing a certified check for $1,000 to use in his drain bidding and only having $75 in his account at the bank, Sawdon arranged with the cashier, Wright, to issue him this certified check and take his note for that amount; that no record of the certified check or the $1,000 note Sawdon gave was entered in the books of the bank, nor credit given Sawdon for the note in his account, the note has never been paid and Sawdon is, and then was, financially irresponsible. These facts, though not disputed, were rejected by the trial court as immaterial.

Of defendants' claim that plaintiff adopted Rachels as his agent in connection with the transfer of the

certified check and Rachels' knowledge is imputable to him, we think the trial court rightly found from undisputed testimony that when plaintiff became owner of the note he was dealing with Rachels as Briggs' attorney and agent, with no knowledge of any of the facts relative to the issuance of the check, and find no evidence in the record that any of those facts were known to Rachels. He and Briggs did know that the bank had declined to recognize the check in Briggs' hands and that Sawdon was claiming Briggs had no right to it, and they knew that Briggs' claim to it as collateral to Sawdon's notes had been determined in his favor in his recent suit with Sawdon. Their testimony is positive that its payment to plaintiff on the land purchase was a *bona fide* business transaction, and there is no testimony to the contrary. We think the court's conclusions that Smith was a good faith, innocent holder for value is sustained by the proofs; anything to the contrary is but surmise, based chiefly on knowledge of facts developed at the trial of which there is no proof that any of the Arkansas parties had actual knowledge.

It may be conceded that under the facts disclosed by defendant's evidence Wright violated the banking law when he certified this check, and as between the bank, Sawdon and Mapes the certification is a nullity and the note given by Sawdon was, as defendant's counsel contend, "a fictitious nullity which is prohibited by the statutes," but the fundamental infirmity of the defense throughout is that plaintiff was not a party to any of those proceedings and knew nothing of them.

That defendant was operating as a private bank under a partnership organization furnishes it no immunity from the well-settled rules of law applicable to certified checks issued in the customary course of banking business. It was operating as a bank and

205—Mich.—4.

holding itself out to the public as such. Wright was and had been for years its cashier in that business, dealing with the public for it in that capacity. As cashier he had inherent authority to certify checks and bind the bank thereby to the same extent as though it were duly incorporated for conduct of the same line of business. *Tripp* v. *Curtenius*, 36 Mich. 494; 1 Morse on Banks and Banking (5th Ed.), § 413. It is undisputed that this instrument as issued and put afloat by defendant was good on its face as a certified check. Certain lines of defense available against other negotiable instruments do not apply to this class of commercial paper. To it the rules relative to prompt presentment for payment have scant application within the statute of limitations. Checks are by custom certified in order that the holders may in their business transactions make use of them as a substitute for money and in their function to that end in the business world they are not expected to be as promptly returned to the bank issuing them for redemption as ordinary checks, notes or similiar negotiable paper. When so certified and issued any holder who has become owner of such paper in good faith for value has a direct claim and right of action against the bank which certified it regardless of its relations with the depositor, or condition of the drawer's account with the bank, or other circumstances attending its certification. It is good in the hands of a *bona fide* holder for value although the maker had no funds in the bank when it was certified. *Union Trust Co.* v. *Preston Nat. Bank,* 136 Mich. 460 (112 Am. St. Rep. 370) ; *First Nat. Bank* v. *Union Trust Co.,* 158 Mich. 95. The opinion in *Union Trust Co.* v. *Preston Nat. Bank,* by Justice CARPENTER, exhaustively reviews the authorities upon the subject and covers in substance, as we think, the controlling questions involved here.

The practice and principles involved in certifying

checks and their import when issued was long ago decisively reviewed by Justice Swayne in *Merchants' Bank* v. *State Bank,* 10 Wall. (U. S.) 604, and has been often cited in later decisions upon the subject. This court cited and quoted from it with approval in *First Nat. Bank* v. *Currie,* 147 Mich. 72 (9 L. R. A. [N. S.] 698, 118 Am. St. Rep. 537).

This certified check from a bank in Michigan found its way to and was put afloat by its payor in Arkansas, had apparently passed through several hands and bore the signature of three indorsers, the last being Briggs, a business man in White county in that State, and, in a deal for some land in VanBuren county, was passed by his attorney and agent upon plaintiff with the assurance that it was genuine. Recognizing from his experience in dealing with banks and checks, that it was a certified check in usual form, with "no intimation that there would be any defense to its payment," as he states, he accepted it in good faith in exchange for 80 acres of land. It was on its face under the law an absolute undertaking of the certifying bank to honor it when presented for payment at any time before barred by the statute of limitations. No obligation rested upon him to, at his peril, make investigation into the reason for and circumstances of its certification. We find nothing in the situation presented here which relieves defendant from its obligations under the well-settled and somewhat emphatic rules of law established in recognition of the importance of the verity of certified checks as a medium of exchange in the business world under the law merchant.

The judgment is affirmed.

BIRD, C. J., and MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred. OSTRANDER, J., did not sit.