# CHARLESTON.

MERCHANTS & MINERS BANK *v.* C. GAUJOT *et als.,* H. W. PERKINS *et als.*

## (No. 5644)

Submitted October 19, 1926.    Decided November 29, 1926.

1. NEGOTIABLE INSTRUMENT LAW—*Under Our Negotiable Instrument Law, Defining Holder in Due Course, a Person is Not Holder in Due Course if He Does Not Take the Note in Good Faith Without Notice of Infirmity in Instrument or Affecting Title of Person Negotiating it.*

   Under our Negotiable Instrument Law, defining a holder in due course, a person is not a holder in due course if he

does not take the note in good faith without notice of any infirmity in the instrument or affecting the title of the person negotiating it.   (p. 649.)

2. SAME—*Person Who Takes Note Has Notice of an Infirmity in Instrument or Defect in Title if He Has Actual Knowledge of Infirmity or Defect, or Knowledge of Facts That His Action in Taking Instrument Amounted to Bad Faith.*

   A person who takes a note has notice of an infirmity in the instrument or defect in the title if he has actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.   (p. 649.)

3. PURCHASER IN GOOD FAITH—*Purchaser in Good Faith Should be One Who Has Purchased With Due Regards to Right of Maker, and Not One Who, Relying on Paying Value for Note and Purchasing Before Maturity Without Knowledge of Any Defense, is Indifferent as to Whether Same Was Honestly Obtained From Maker. Where Evidence Tends to Show Such Indifference Question of Good Faith for Jury.*

   A purchaser in good faith should be one who has purchased with due regards to the rights of the maker, and not one who, relying on paying value for the note and purchasing before maturity without knowledge of any defense, is indifferent as to whether the same was honestly obtained from the maker. Where the evidence tends to show such indifference the question of good faith is for the jury.   (p. 651.)

4. SAME—*Question of Good Faith or Bad Faith of Holder of Note Peculiarly for Jury and Not for Court, Especially When Burden Rests on Holder to Show He Became Holder in Due Course.*

   The question of good faith or bad faith of the holder of a note is peculiarly for the jury and not for the court, especially when the burden rests on the holder to show that he became the holder in due course.   (p. 651.)

5. INSTRUCTION—*Instruction Given at Instance of Plaintiff Telling Jury That if Plaintiff Before Maturity Discounted the Note in Question for Value, In Good Faith and Had no Knowledge of Infirmity in Instrument or Defect in Title Thereto, Entitled to Recover, Omitting Element for Knowledge of Facts That His Action in Taking Instrument Amounted to Bad Faith, is Erroneous, Where There is Appreciable Evidence Proper to be Considered by it on Question of Good Faith.*

   An instruction given at the instance of the plaintiff telling the jury that if the plaintiff before maturity discounted the

note in question for value, in good faith, and had no knowledge of any infirmity in the instrument or defect in the title thereto, he is entitled to recover, and omitting the element, "or knowledge of such facts that his action in taking the instrument amounted to bad faith", is erroneous, where there is appreciable evidence proper to be considered by it on the question of good faith.   (p. 650.)

LITZ, PRESIDENT, Absent.

Error to Circuit Court, McDowell County.

Action by Merchants & Miners Bank against C. Gaujot and others.  Judgment for plaintiff, defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Samuel Solins, Sanders, Crockett, Fox & Sanders,* for defendant in error.

*Harman & Howard, Joseph M. Crockett, D. J. F. Strother,* for plaintiff in error.

WOODS, JUDGE:

H. W. Perkins, M. O. Litz and Easley-Litz Pocahontas Coal Land Company, a corporation, prosecute this writ of error to a judgment of the circuit court of McDowell County entered against them and J. Logan Hill as indorsers on a certain $5,000.00 promissory note, following a verdict in favor of the plaintiff, suing as a holder in due course, for the face of the note, plus interest.

The note in question was dated August 1, 1923, and payable at the plaintiff bank six months after date to the Easley-Litz Pocahontas Coal Land Company, hereafter designated as the Easley-Litz Company.  At the time of its execution and delivery to the Easley-Litz Company, by its makers T. B. Lane and C. L. Gaujot, said Easley-Litz Company was negotiating for the purchase of certain properties from the Pocahontas Coal & Coke Company, and the note was indorsed, and protest waived, by the payee company by H. W. Perkins as secretary, and by the following officers in their individual capacities, to-wit, H. W. Perkins, M. O. Litz and J. Logan Hill, and the note entrusted to the custody of its treasurer,

J. Logan Hill, to be used in case the purchase of said property was consummated. The purchase fell through and Litz and Perkins knowing the makers of the note to be insolvent assumed that it was still in Hill's possession, as treasurer, until they were informed in June, 1925, by plaintiff bank that it had on February 1, 1924, discounted said note for the benefit of the Hill Realty Company, which was conducted under the direction of Hill, the treasurer of the Easley-Litz Company. After defendants denied liability on the ground that the plaintiff bank was not a holder in due course, this action was instituted to recover on the note.

The nature of the question involved here makes it proper to take notice of the testimony before attempting to discuss the assignments of error. The evidence for the plaintiff, on the question of the bona fides of the transfer of the note, stands alone on the testimony of Swope, its president, who stated that he was "actively connected with the work of the bank." He purchased the note for the plaintiff bank over four months after it was dated. He contents himself with saying that he did not have notice of any infirmity in the note and that he took it in good faith. On being asked to explain how he happened to discount the note for Hill and place the proceeds to the credit of the Hill Realty Company, he said: "Well, the time has been so great that I cannot remember all the conversation." And on cross-examination he again admitted, "I do not recall the conversation in detail." He admitted that he had known Hill, who presented to his bank the note in question, for twenty-odd years; that Hill was a director in his bank, and was president of the Hill Realty Company, which got the benefit of the proceeds of the note; that the offices of the Hill Realty Company were about a block from the bank; and, further, that he (Swope) was the owner of sixteen shares of stock in said Hill Realty Company. And on being pressed as to whether or not he was secretary and treasurer of said company, while denying that he was, admitted, "I had an inquiry sometime ago addressed to me as secretary of the concern." A certificate of stock issued to Joseph N. Crockett for thirteen shares of the capital stock of the Hill

Realty Company, dated October 29, 1924, signed by Bernard
O. Swope, secretary, was introduced in evidence by defendants.

Perkins and Litz testified to the facts concerning the
issuance and history of the note, as stated heretofore. Hill
testified that he was the president of the Hill Realty Com-
pany, a director of the plaintiff bank, and treasurer of the
Easley-Litz Company; that the Easley-Litz Company was the
owner of the note in question at the time he discounted it at
the bank; that it was the understanding of the company with
him that it was to be discounted for anything that was neces-
sary for the use of that company. He further stated that on
the morning of the day the note was discounted Mr. Swope
told him that the Hill Realty Company was overdrawn and
that the bank examiner was in town and that the Realty Com-
pany would have to make it good; that he told Swope, ''I had
this note but that it did not belong to me, *but that I would put
it up temporarily until we could make other arrangements;''*
that he told him the note was the property of the Easley-Litz
Company and told him ''I would put it up temporarily, and
he discounted it there temporarily''; that ''along last fall I
gave him the note with the Hill's Realty Company's signature
on the front of it for sixty-five shares of the Easley-Litz Com-
pany's stock, and a note of J. A. Visquesney for $2,000.00
which was past due, and asked him to give this note back;
and that Swope said ''He would have to see about it, and I
left it there with him, and later on he sued on this note.''
Swope says he did not accept the collateral. The collateral
here mentioned was never returned to Hill by the bank.

Litz and Perkins, as we have said, state that they did not
receive notice of protest, nor in fact any notice of the al-
leged transfer until June, 1925. Swope claims that the note
was protested but he does not offer testimony of the notary
claiming to have performed the act. Only a notation of the
fact of protest appears on the note offered in evidence. Hence
there is no legal evidence of protest and that notice thereof
was given the indorsers. Swope made no claim that any de-
mand was made upon, or notice given to, any of the indorsers
between February 1, 1924, the date the note fell due, and

June, 1925. Swope, while denying that Hill informed him of the ownership of the note, did not deny that he called on Hill to arrange the overdraft on account of the presence of the bank examiner, nor that Hill told him he "would put it (the note) up temporarily until we could make other arrangements."

The plaintiff introduced in evidence with the testimony of Swope a ledger sheet showing the account of Hill Realty Company, as a customer of the bank, between the dates of November 20th, 1923, and January 11th, 1924. From this exhibit it appears not only that the Hill Realty Company had frequently overdrawn its account prior to December 6, 1923, when the note was alleged to have been discounted, but was on that day overdrawn more than $1300.00. Swope explains that the latter result was brought about by the payment of checks of the Hill Realty Company on the day of discount, which he claims he would not have paid, but for the discount of the note in question. However, on being asked to tell the jury whether or not the Hill Realty Company's account was overdrawn on that date, Swope replied: "Well it has been so long that I don't have any recollection of it, except from the record. According to the records, I should say that it was."

The defenses interposed by the appealing defendants involve two elements: (1) Hill's defective title to the note; and (2) notice of plaintiff. Under the evidence it is plain that Hill's title was defective. When it is shown that the title of any person who has negotiated an instrument is defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course. Chapter 98A, §59, Code. When the burden of proof has been shifted to the holder of an instrument, the mere possession thereof, though accompanied by proof that he acquired it before maturity and paid value therefor, will not be sufficient. To entitle him to recover he must further *prove the circumstances* under which he acquired the paper and *state facts constituting the good faith required. Merchants Bank & Trust Co.* v. *People's Bank of Keyser,* 99 W. Va. 544. In the face of these principles the Court gave for the plaintiff

the following instruction: ''The Court instructs the jury that if you believe from the evidence in this case that the defendants, Easley-Litz Pocahontas Coal Land Company, a corporation, H. W. Perkins and M. O. Litz, endorsed the note in evidence and thereafter delivered same to J. Logan Hill, and if you further believe from the evidence that the said J. Logan Hill, on December 6th, 1923, discounted said note to the Merchants and Miners Bank and had the proceeds of same credited to the account of Hill Realty Company, and that the proceeds of said note had all been checked out by said company on the date of maturity of said note, and if you further believe that said Merchants and Miners Bank discounted the note in good faith and had no knowledge of any infirmity in the instrument or defect in the title of J. Logan Hill to said note, then you shall find for the plaintiff, even though you may believe that J. Logan Hill discounted said note to the Merchants and Miners Bank in violation of his promise and agreement with the other endorsers of said note.'' It will be noted that in this instruction the Court told the jury that if the plaintiff before maturity discounted the note in question in good faith and had no knowledge of any infirmity in the instrument or defect in the title thereto, that it should find for the plaintiff. Chapter 98A, §56, provides that a person who takes a note has notice of an infirmity in the instrument (1) if he has actual knowledge of the infirmity or defect, or (2) *knowledge of such facts that his action in taking the instrument amounted to bad faith.* It will be observed that the instruction complained of omitted the latter clause ''or knowledge of such facts that his action in taking the instrument amounted to bad faith.''

One cannot escape notice by wilfully shutting his eyes to obvious facts. *Clark* v. *Roberts,* 206 Mass. 235. A purchaser in good faith should be one who has purchased with due regards to the rights of the maker, and not one who, relying on paying value for the note and purchasing before maturity without knowledge of any defense, is indifferent as to whether the same was honestly obtained from the maker. Where the evidence tends to show such indifference the question of good

faith is for the jury. *Shawnee State Bank* v. *Lydick,* 109 Neb. 76. To constitute bad faith it is not necessary that the purchaser should have specific notice of the infirmity in the note. *Link* v. *Jackson,* 158 Mo. A. 63. Where the facts and circumstances attending a purchase are so cogent and obvious that to remain passive amounts to bad faith on the part of the purchaser, and shows bad faith on the part of the seller, the purchaser will be deprived of his status as holder in due course. *Bank* v. *Hardin,* 83 W. Va. 119.

Everyone must conduct himself honestly in respect to antecedent parties, when he takes negotiable paper, in order to acquire title which will shield him against prior equities. While he is not obliged to make inquiries he must not wilfully shut his eyes to the means of knowledge which he knows are at hand, for the reason that such conduct, whether equivalent to notice or not would be plenary evidence of bad faith. *Goodman* v. *Simonds,* 20 How. 343; *Bank* v. *Holm,* 71 Fed. 489, 19 C. C. A. 94.

Swope was permitted here to say that he took the note in good faith without detailing the circumstances of the transaction. He says he does not remember what was said. Charged by the law of showing facts constituting good faith, has the plaintiff borne the burden cast upon it? ''It is not the mere denial of knowledge,'' says this Court, ''that entitles it to a finding in its favor on such issue, but the circumstances under which it took the paper and which it has the affirmative duty to prove after its fraudulent origin has been shown (defective title in the instant case), must be wholly consistent with the theory that it was not guilty of bad faith in acquiring the instrument.'' *Maryland Finance Corp.* v. *Peoples Bank of Keyser,* 99 W. Va. 230. Swope, averring good faith, does not deny that Hill told him ''he would put up the note temporarily until we could make other arrangements'' or that the transaction was induced by his (Swope's) statement to Hill to arrange the overdraft of $1300.00 on account of the presence of the bank examiner in the city. Swope was admittedly a stockholder in the Hill Realty Company, if not in

fact its secretary, which got the benefit of this transaction. Close personal relations between payee and purchaser are to be considered with other circumstances. *Clark* v. *Roberts, supra.* Thus the business association between payee and holder bank may be considered. *Lewis* v. *Western Stock Remedy Co.* (Ia.) 178 N. W. 536. Swope, although the note was presented for discount by the known executive officer of the Realty Company, and for its benefit, did not require its endorsement. Here was a paper that bore on its face the fact that it was executed four months before, presented by a customer of the bank which had theretofore overdrawn its account, and which account was at the time of discount thereof, overdrawn. There are subsequent facts in evidence to consider, such as failure of the bank to notify the solvent indorsers for over a year and one-half after the note became due, that it was the holder of the paper; and that negotiations were entertained with Hill by the bank for the deposit of collateral whereby the note in question was to be withdrawn. It was for the jury, and not for the court, especially when, as here, the burden is on the holder, to say whether from all the facts and circumstances surrounding the transaction the bank took the paper in good faith. Hence the jury should have been told that it was to determine not only whether the bank had actual knowledge, but whether it "had knowledge of such facts that its action, in taking such note, amounted to bad faith." This vital element was omitted from the instruction. This was error. The giving of other instructions by the defendant, if embodying this element, does not cure it. *Lovett* v. *Lisagor,* 100 W. Va. 154; *Blackwood* v. *Traction Co.,* 96 W. Va. 1; *Culp* v. *Railway Co.,* 77 W. Va. 136; *Ward* v. *Ward,* 47 W. Va. 766.

As this case is subject to retrial under the view we have taken of the law, it is unnecessary for us to comment on the probative force of the evidence offered as to plaintiff's actual knowledge and good faith. Suffice it to say that we believe that there were such facts and circumstances put in evidence as to make it a proper subject for jury consideration on the question of good faith.

　　*Judgment reversed; verdict set aside; new trial awarded.*