# CHARLESTON.

INTERNATIONAL BANK v. PEOPLES BANK OF KEYSER
WEST VIRGINIA

(No. 5574)

Submitted May 11, 1926.     Decided May 10, 1927.

1.   NON-SUIT—*Plaintiff in An Action at Law Will Not be Permitted to Suffer Non-Suit or Dismiss His Action Without Prejudice After Case Has been Submitted for Decision to Court, Sitting in Lieu of Jury.*

   The plaintiff in an action at law will not be permitted to suffer a non-suit or dismiss his action without prejudice after the case has been submitted for decision to the court, sitting in lieu of a jury.   (p. 602).

2.   BILLS AND NOTES—*When Shown That Title of Any Person Who Negotiated Instrument Was Defective, Burden is on Holder to Prove That He or Some Person Under Whom He Claims, Acquired Title as Holder in Due Course.*

   When it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired title as a holder in due course.   (p. 605).

Error to Circuit Court, Mineral County.

Action by International Bank against Peoples Bank of Keyser, Keyser, West Virginia.   Judgment for defendant, plaintiff brings error.

*Affirmed.*

*R. A. Welch* and *Hugh H. Obear,* for plaintiff in error.

*Taylor Morrison* and *Chas. N. Finnell,* for defendant in error.

LITZ, JUDGE:

This is an action by notice of motion for judgment on eleven certificates of deposit for $5,000.00 each, fraudulently issued by T. D. Leps as cashier of defendant Peoples Bank of Keyser, Keyser, West Virginia, to Adolph Segal.   Each of the certificates, with the exception of number, is as follows:

"Certificate of Deposit
Peoples Bank of Keyser

No. 354                    Keyser, W. Va., Mar. 18, 1922.
Adolph Segal has deposited in this bank Five
Thousand & No—100 Dollars, payable to the order
of himself with interest at 3 per cent per annum
for six months *months* on return of this certificate
properly endorsed.
Not subject to check                    T. D. Leps,
$5,000.00.                                    Cashier."

Similar certificates of deposit, issued by Leps as cashier of
defendant bank were involved in *Maryland Finance Cor-
poration* v. *Peoples Bank of Keyser,* 99 W. Va. 230, and *Mer-
chants Bank & Trust Co.* v. *Peoples Bank of Keyser,* 99 W.
Va. 544.

At the trial, before the court in lieu of a jury, the plaintiff
International Bank adduced evidence to the effect that on
March 22, 1922; at its place of business in the city of Wash-
ington, D. C., it purchased from S. M. Smith ten of the cer-
tificates of deposit in question for the sum of $47,250.00, evi-
denced by eight checks for $5,000.00 each, dated respectively,
March 22d, 23d, 24th, 25th, 27th, 29th and 31st, a check for
$5,500.00, dated March 22d, and a check for $1,750.00 dated
April 5th; that on March 20th after Smith had offered to sell
these ten certificates, which were then held by W. H. West, in
Philadelphia, plaintiff wired Irving National Bank of New
York:

"As a New York correspondent of the People's
Bank of Keyser, W. Va., have they been carrying
a satisfactory bank balance with you. Is this Bank
account satisfactory. Wire us. Information will
be kept in strict confidence."

That the Irving National Bank replied, March 21st, ad-
vising:

Your wire March twentieth Peoples Bank, Key-
ser, West Va., moderate non borrowing account
conducted in satisfactory manner."

That on March 20th plaintiff also wired Merchants National
Bank of Baltimore:

"As a Baltimore correspondent of the People's Bank of Keyser, W. Va., have they been carrying a satisfactory bank balance with you. Is this Bank account satisfactory. Wire us. Information will be kept in strict confidence."

That Merchants National Bank of Baltimore replied, March 21st, stating:

"Peoples Bank Keyser keep satisfactory account balance in accord with accommodation granted."

That on March 21st plaintiff wired the defendant bank:

"Did you issue for value and will they be paid at maturity time certificates deposit numbered three four six to three five four inclusive for five thousand each dated March eighteenth twenty-two due in six months time stop also certificate number three three five should this number not be three four five for five thousand total amount certificates fifty thousand stop wire answer."

That it received a reply message, dated March 21st, signed "Peoples Bank of Keyser", reading:

"Certificates referred to in telegram issued and will be paid at maturity letter will follow."

That the plaintiff later received the following letter:

"PEOPLES BANK OF KEYSER
Capital Surplus and Undivided Profits $80,000.00
KEYSER, W. VA.

Mar 21st, 1922.

International Bank,
Washington, D. C.
Gentlemen:

Confirming our telegram of even date we beg to state that we issued certificates referred to in your telegram and that same will be paid at maturity.

Yours very truly,
(Signed)   T. D. LEPS,
Cashier."

That it also purchased from S. M. Smith, on March 25th, the eleventh certificate for the sum of $4,775.00 evidenced by

check dated April 1st, and that before purchasing any of the
certificates it was informed through the Bankers' Blue Book
that the capital stock of the defendant bank was $50,000.00,
surplus fund $25,000, and undivided profits, less expenses,
interest and taxes, $4,479.10.

Upon the completion of the evidence, March 31st, 1925, the
following order was entered:

> "On this day came the parties by their attor-
> neys, R. A. Welch and Hugh H. Obear for the
> plaintiff, and Chas. N. Finnell and Taylor Morri-
> son for the defendant, and attorneys for defend-
> ant again tendered to be filed on behalf of defend-
> ant its plea of *non est factum,* to the filing of
> which the plaintiff, by its attorneys, objected, but
> the court overruled said objection and ordered
> said plea to be filed and said plea was filed, to
> which action and ruling of the Court in permit-
> ting said plea of *non est factum* to be filed the
> plaintiff, by its attorneys, excepted, and issue hav-
> ing heretofore been joined on defendant's plea of
> non-assumpsit, issue is now also joined on its said
> plea of *non est factum.*
> "And the parties to this action, by their said
> attorneys, waived a trial by jury and submitted
> this case to the Court in lieu thereof, and there-
> upon the testimony of witnesses on behalf of the
> plaintiff & testimony of witnesses on behalf of the
> defendant was taken at the bar of the court by the
> court reporter and the same is ordered transcribed
> into the English language and filed in the papers
> of this case.
> "And the Court without passing upon any of
> the objections made during the progress of the
> trial, except where the notes of the Court reporter
> show the action of the Court on an objection made,
> takes time to consider of its judgment."

June 10, 1925, before the court had announced a decision,
plaintiff moved to dismiss its action without prejudice, which
motion being resisted by the defendant, was overruled. There-
upon the plaintiff further moved for permission to suffer a
non-suit, which motion being resisted by the defendant, was
also overruled; and the court having maturely considered its

judgment and argument of counsel, found for the defendant and entered judgment accordingly.

The plaintiff, prosecuting error, contends that the trial court committed error: (1) in overruling motions for plaintiff to dismiss its action without prejudice, and for a non-suit; and (2) in finding and entering judgment for the defendant.

Section 11, Chapter 133 of the Code provides that "A party shall not be allowed to suffer a non-suit unless he does so before the jury retires from the bar." *Commonwealth Pipe & Supply Co.* v. *Nitro Products Corporation,* 95 W. Va. 13, construes the Act, holding: "Plaintiff in an action at law has the right to suffer a voluntary non-suit at any time before the jury retires from the bar, or at any time *before the case has been submitted for decision to the court sitting in lieu of a jury;* unless defendant has filed a counter-claim or it is clear that his rights will be prejudiced by a non-suit, excepting of course the ordinary inconvenience to which he would be subjected by another suit." The Virginia court, construing a like statute, holds that the plaintiff in an action at law, where no counter-claim has been filed by the defendant, may suffer non-suit at any time before the case has been submitted to the jury, and they have retired from the court room, or if heard by the court, before the case is submitted to the court hearing it. *Harrison* v. *Clemmens,* 112 Va. 371, 71 S. E. 538. "It is the right of a plaintiff to dismiss his action or suffer a non-suit at any time before the submission of the case to the court or jury." *Charleston Trust Company* v. *Todd et al.,* 101 W. Va. 31, 131 S. E. 638.

The order of March 31, 1925, submitting the case to the court in lieu of a jury, upon testimony in behalf of the plaintiff and defendant, and reciting that the "court takes time to consider of its judgment" (without condition or reservation), effected a final submission, depriving the plaintiff of the right thereafter to suffer a non-suit or dismiss his action without prejudice.

The certificates represented on their face that the payee, Segal, had deposited in the defendant bank the sums of money therein specified, only two days before Smith was offering

them for sale several hundred miles beyond this State, at a discount of fourteen per cent; from which it was apparent to the prospective purchaser that these certificates had been afloat from the time of their supposed issue—hence the necessity, recognized by the plaintiff, of investigating the validity of the instruments before purchasing them from Smith. It was important, as the plaintiff realized, to ascertain not only if the certificates had been authorized, but whether they had been issued for value. In view of the fact that their total face value equaled the capital stock of the defendant bank, its ability to pay would of course depend upon whether the instruments had been issued for value. The plaintiffs therefore sent the message, addressed to the bank, requesting this information. The reply message, in the name of the defendant, ignoring the inquiry as to whether the certificates had been issued for value, merely stated: ''Certificates referred to in telegram issued and will be paid at maturity. Letter will follow''. The letter which followed also ignored the pertinent inquiry as to whether the instruments had been issued for value, and, being signed by Leps, clearly indicated that he was also the author of the telegram, and therefore whatever information it conveyed came from Leps who had issued the questioned documents. The inquiry of the plaintiffs, answered by Leps, thus resulted not only in failure to secure the important information specifically requested, but also in casting further suspicion on the validity of the instruments.

The plaintiff being dissatisfied with the imperfect answer of Leps, on March 25th wrote the defendant, advising that it had bought ten of the certificates in question, and further stating:

>''We would like to have you tell us in confidence what you issued these certificates for; whether for cash or for notes. Also have you any more of these certificates out payable to Adolph Segal? How much of this kind of certificate have you outstanding at the present time?''

The letter continues:

>''The reason we are asking these questions is that a short time after we purchased these $50,000

> worth of your certificates, we were offered $50,000
> more of your time certificates of the People's Bank
> at Keyser, W. Va.  Our officers thought it some-
> what strange that there should be so much of your
> time certificates afloat in Washington and in jus-
> tice to you we wanted to verify whether these state-
> ments were correct or not."

Notwithstanding the officers of plaintiff entertained serious
doubts regarding the vadidity of the certificates, as the letter
indicates, it does not pretend to have made any effort to re-
scind the transaction with Smith and recover back its post-
dated checks; but on the contrary, claims to have purchased
an additional $5,000.00 certificate.

Plaintiff does not pretend to have sought any information
concerning Segal until March 25th, the date of the alleged
purchase of the last certificate, when it wrote Smith, who
lived in Washington:

> "In order that we may have our files complete
> on the time certificates of the People's Bank at
> Keyser, W. Va., we want to know who Adolph
> Segal is.  Where is he located?  Kindly give us ·
> this information at the earliest possible moment."

The vice-president of plaintiff, who represented it in the pur-
chase of the certificates, was asked on cross-examination: "Did
it not strike you as being unusual and very much out of the
way that a bank would on the same day issue as much as ten
certificates of deposit to one man for $5,000.00 each, and
reciting that he had deposited that much cash in the bank?"
He replied: "I did not know but what Adolph Segal was a
big operator here and deposited $100,000.00 in the Peoples
Bank of Keyser and took their time deposit for it".  Such
impression on the part of the witness would have made the
case even more strange and unusual from a business stand-
point.  The fact that a business man experienced in handling
large funds would deposit in bank $50,000.00 and immedi-
ately seek to float the certificates of deposit at large discounts,
is not consonant with human experience or common sense.

The case of *Maryland Finance Corporation* v. *Peoples Bank of Keyser,* cited, involved a similar certificate of deposit issued by Leps to B. H. Dundon, December 28, 1921, for only $1,400.00, which the Finance Corporation purchased from Dundon on January 6, 1922. Discussing the circumstances of the transaction, this Court said:

> "The plaintiff paid Dundon $1,315.00 for what was represented on the face of the certificate to be a cash deposit of $1,400.00. This substantial discount would naturally suggest the question to the prudent business man, why would Dundon sell a certificate of deposit at $85.00 less than its cash value? Yet this record does not show that any inquiry was made by the plaintiff company to secure an answer. No information was obtained or sought as a reason for this action. Is it not strange that Dundon, who lived in Baltimore, and had formerly been identified with the plaintiff corporation, as an officer, would deposit his money in a small bank in another State, secure a certificate of deposit, and then return to his home city and negotiate a sale of said certificate at an unusual discount to the company with whom he had been formerly identified? The fact that he was willing to take this substantial discount would repel the presumption that he had made a cash deposit of $1,400.00. If not cash, then on what terms did he obtain such certificate of deposit? Would not this question naturally arise in the mind of the prudent business man to whom the paper was offered for sale?"

The burden was on the plaintiff to prove that it is a holder in due course. "When it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired title as a holder in due course." Section 59, Chapter 98-A, Code.

Giving due consideration to the finding of the trial court, we are of opinion to affirm the judgment thereon in favor of the defendant.

*Affirmed.*