R. C. WEAVER *v.* J. A. HARRELL, *Receiver*

(No. 7965)

Submitted October 2, 1934. Decided October 9, 1934.

410

*H. J. Wilcox, W. Bruce Talbott* and *D. H. Hill Arnold,* for plaintiff in error.

*A. Blake Billingslea, Harry Mason* and *John W. Mason,* for defendant in error.

HATCHER, JUDGE:

This action involves the status of stale certified checks and also the position of a third party who has accepted them. The plaintiff, as holder, secured a judgment for the amount of the checks against the bank which certified them. The receiver of the bank prosecutes error.

On March 11, 1918, Mrs. Lucy O'Neal had on deposit with the Citizens National Bank of Philippi, over $5,-000.00. Her husband and general agent, S. L. O'Neal, signed her name to three checks bearing that date and payable to her order in the sum of $1,000.00 each, and had the bank certify them. The bank neglected to charge those checks to her account, or to make any record whatever of their certification. There were no credits to her account in the bank on or after March 11, 1918, except two items of $84.63 each and two of $35.00 each. Within six months after the checks were certified she had withdrawn all of her deposits (except 86c) "in the regular course of business" upon checks other than those certified. Commencing in 1919, and throughout the years following, she was a constant borrower from the bank in amounts ranging from $1,500.00 to $3,500.00, giving deeds of trust as security. In January, 1930, she owed the bank "something like $4,000.00." During that period, the certified checks were kept, unused, by her husband, until his death on December 31, 1929. On January 3,

1930, she endorsed and delivered the checks to her nephew, the plaintiff R. C. Weaver, who claimed that she owed him $1,025.00 borrowed during 1926 and $1,200.00 borrowed in 1929, with interest. She confirmed his claim and explained that the loans were necessitated by the sickness of her husband and his inability to make any money. (There were no written memorials of these loans.) Mrs. O'Neal testified explicitly that there was no understanding between herself and Weaver that he would return to her the difference between the amount of her debt, which she said was then "somewhere between $2,400.00 and $2,500.00, counting interest," and the face value of the three checks ($3,000.00). She said: "We talked of no settlement between us. I simply turned them (the checks) over to him to cancel my debt. * * * There was no agreement between us. * * * I turned the checks over to take care of my debt to him. * * * I was so anxious to pay him, I didn't stop to think anything about it (the difference)." Weaver did not qualify Mrs. O'Neal's statement in any manner, though he expressed an intention to return to her whatever sum he collected in excess of what she owed him. He had the checks presented forthwith to the bank for payment, which was refused. This action was brought in January, 1931, the bank was taken over by the receiver in October, 1931, and judgment was secured in February, 1934, for $3,731.00.

The bank plead the general issue and a special plea setting up the statute of limitations. A demurrer to the latter was sustained by the trial court, and defendant charges error.

When a bank certifies a check, "the certification is equivalent to an acceptance." The Negotiable Instruments Law (adopted by our legislature, Acts 1907, chapter 81, and re-enacted in Code 1931, 46-1 to 16 inclusive), sec. 187. "Certification is an absolute promise on the part of the bank to pay," etc. Bigelow on Bills, Notes and Checks (3d Ed.), section 205. Accord: Daniel on Neg. Insts. (7th Ed.), sec. 1790; 5 R. C. L., subject Checks, section 43. "* * * the bank enters into an abso-

lute undertaking" to pay one who holds a certified check in due course "at any time before it becomes barred by the statute of limitations." 7 C. J., subject Banks and Banking, section 435. Since by certification a bank becomes *primarily liable* on the check, *presentment for payment is not necessary to charge the bank.* N. I. L., sec. 70. Presentment not being necessary, the statute of limitations operates from the date of certification. Bigelow, *supra,* secs. 349 and 350; 37 C. J., subject Limitation of Actions, sec. 198. Section 70, N. I. L., as originally adopted, therefore changed the common law which required a demand on any instrument (such as a certified check) intended to circulate as money, before the statute commenced to run. This innovation was remarked by Professors Ames, McKeehan, Brannan and Bigelow. See Brannan's Neg. Inst. Law (5th Ed.), sec. 70, page 769; Bigelow, *supra,* sec. 104, note 6. It was also recognized by the legislatures of Virginia and West Virginia, which, by special enactments, excepted bank notes and certificates of deposit from the operation of section 70. The amendment thereto by our legislature (made in 1931) is as follows: "The statute of limitations shall not begin to run against the holder of a certificate of deposit or a bank note until after presentment and demand for payment." Code 1931, 46-6-1. The failure of the legislature to include certified checks in the exception to section 70 must be taken as conclusive of the legislative will that the statute of limitations should run against the holder of a certified check in favor of the bank from the date of certification. Accordingly, we hold that the circuit court erred in sustaining the demurrer to the defendant's special plea.

Defendant requested a peremptory instruction on the ground that the plaintiff is not a holder in due course. The instruction was refused and error is assigned to that refusal. Although our ruling on the special plea settles this case, we shall consider the second assignment of error in order to exemplify the effect of some provisions of the N. I. L.

Since Mrs. O'Neal's account was not charged with the

certified checks and she exhausted her deposits without using the checks, they became *nudum pactum* as between her and the bank. Under those circumstances there would be no justice in requiring the bank to pay the checks—and no warrant of law therefor—unless Weaver is a holder in due course and without notice of the equities between the bank and Mrs. O'Neal. The Negotiable Instruments Law circumscribes closely transactions such as this. Section 53, N. I. L., provides that when an instrument such as a certified check "is negotiated an unreasonable time after its issue, the holder is not deemed a holder in due course." Section 193 prescribes that in determining an unreasonable time, regard shall be had "to the nature of the instrument, the usage of trade or business, if any, with respect to such instruments and the facts of the particular case."

The plaintiff contends that whether or not the checks were negotiated within a reasonable time is a jury question, citing *Bank* v. *Gaujot,* 102 W. Va. 643, 136 S. E. 199. Defendant contends that the question is one of law, citing *Nuzum* v. *Sheppard,* 87 W. Va. 243, 104 S. E. 587. The courts generally have not been entirely consistent on this question. Their declarations have been largely influenced by the particular facts of the several cases, just as ours have been. Where the facts are conceded and establish clearly a definite legal status, we conceive it to be the duty of the court to declare that status. "Where the facts are doubtful or disputed, the question of reasonable time is a mixed question of law and fact. But when the facts are clear and undisputed, the question is one of law for the court." Crawford's Ann. Neg. Inst. Law, page 7. *Colwell* v. *Colwell,* (Or.) 4 A. L. R. 876, 880.

A check is certified that it may be used as a substitute for money. Joyce, Defenses to Com. Paper (2d Ed.), sec. 850; *Smith* v. *Hubbard,* 205 Mich. 44, 171 N. W. 546; *Willetts* v. *Bank,* 2 Duer (N. Y.) 121, 132. Therefore, in the ordinary usage of business the checks herein should have been negotiated within a short while after they were certified. We do not have here the delay in presentment of a few days or months—or even a year or

so—about which the minds of reasonable men might possibly differ, but the delay of a period greater than that prescribed in the statute of limitations as ordinarily a bar to actions on contracts in writing. We have found no case in which a like period is not admitted to constitute an unreasonable delay. *National Bank* v. *Schmelz Bank*, 136 Va. 33, 116 S. E. 380, relied upon by plaintiff so concedes. See the decisions cited in Vol. 5, Uniform Laws Ann. (Neg. Insts.) sec. 186, under the title "Case Notes". The legislative idea of unreasonable delay is reflected in the statute authorizing a bank to refuse payment of a check after the expiration of even twelve months "from the date payable", etc. See Code 1931, 31-8-27. We are therefore of opinion that the checks herein were negotiated an unreasonable time (as a matter of law) after they were certified.

Moreover if plaintiff did not know that Mrs. O'Neal had been a constant borrower from the bank during the period between 1919 and 1930, he was cognizant of her impecuniosity from 1926 to 1930. When she presented him with instruments indicating, on their face, that $3,-000.00 had been at her disposal during that period, the natural question arising in his mind should have been why had she borrowed (or been constrained by her husband to borrow) money at interest if she had idle money in the bank. Furthermore, her anxiety to have him accept $3,000.00, presumably in bank, in cancellation of an unsecured debt not exceeding $2,500.00, should have given him pause. He should have questioned why his aunt (shown to have children of her own), in her straightened financial condition, should anxiously seek to pay him some $500.00 more than she owed him. We have held that the sale of certificates of deposit (in a solvent bank) at substantial discount, was alone sufficient to deprive the purchaser of the position of a holder in due course as "not consonant with human experience or common sense." *International Bank* v. *Peoples Bank*, 103 W. Va. 597, 603, 138 S. E. 745; *Finance Corporation* v. *Peoples Bank*, 99 W. Va. 230, 238-9, 128 S. E. 294.

Therefore we conclude that the plaintiff is not a holder

in due course and that the trial court erred in not giving the peremptory instruction in favor of defendant. The judgment of the circuit court is reversed, the verdict of the jury set aside, and a new trial awarded the defendant.

> *Judgment reversed; verdict set aside; new trial awarded.*